IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD.     )
AND SAMSUNG SEMICONDUCTOR,         )
INC.,                             )
                                  )
                Plaintiffs,        )
                                  )          C.A. No. 21-1453 (RGA)
        v.                         )
                                  )
NETLIST, INC.,                     )
                                  )
                Defendant.         )

**SAMSUNG'S ANSWERING BRIEF IN OPPOSITION TO
NETLIST'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT (D.I. 14)**

<br>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

OF COUNSEL:

Brian Nester                                *Attorneys for Plaintiffs*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-6000

Alice J. Ahn
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA  94105-2533
(415) 591-6000

March 2, 2022

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

Table of Abbreviations ......................................................................................................... vi

Introduction .......................................................................................................................... 1

Background ........................................................................................................................... 2

      A.    Samsung's Declaratory Judgment Complaint .......................................................... 2

      B.    Netlist's First Motion to Dismiss and Its Second-Filed Lawsuit ........................... 3

      C.    Samsung's First and Second Amended Complaints in the Present Action ........... 4

Argument .............................................................................................................................. 4

I.     The Court Has Jurisdiction Over Every Count of the First Amended Complaint ............. 4

      A.    Counts I–III: non-infringement of the '523, '595, and '218 patents ..................... 5

      B.    Count IV: non-infringement of the '912 patent ..................................................... 6

      C.    Counts V–VII: non-infringement of the '506, '339, and '918 patents .................. 8

      D.    Counts VIII–XII: unenforceability of the '523, '218, '595, '912, and '506
          patents and breach of contract ............................................................................... 9

II.    The Court Should Exercise Jurisdiction Over the Declaratory Judgment Claims ............. 9

      A.    This case does not interfere with the Breach Action ........................................... 10

      B.    This case does not interfere with the jurisdiction of Judge Seeborg .................... 11

      C.    This Court can resolve the entire case; SEA is unnecessary ............................... 11

      D.    This case, not Netlist's Texas Action, is the first filed ........................................ 12

III.   Samsung Has Stated Claims for Unenforceability ........................................................... 15

      A.    The '912 patent ..................................................................................................... 16

      B.    The '523, '218, '595, and '506 patents ................................................................ 17

          1.    The FAC alleges "but-for" materiality .................................................... 17

          2.    The FAC alleges specific intent to deceive the Patent Office ................. 18

IV.   Samsung Has Stated a Claim for Breach of Netlist's RAND Obligations ...................... 19

Conclusion .......................................................................................................................... 20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*3M Co. v. Avery Dennison Corp.*,
   673 F.3d 1372 (Fed. Cir. 2012)..................................................................................5

*Alkana v. ING Bank, F.S.B.*,
   No. 10-04079, 2010 WL 11601042 (C.D. Cal. July 30, 2010)................................10

*Anza Tech., Inc. v. Mushkin, Inc.*,
   934 F.3d 1359 (Fed. Cir. 2019)..................................................................13, 14, 15

*Arris Group, Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011)..................................................................................6

*Ass'n for Molecular Pathology v. USPTO*,
   653 F.3d 1329 (Fed. Cir. 2011)..................................................................................5

*Barnes & Noble, Inc. v. LSI Corp.*,
   823 F. Supp. 2d 980 (N.D. Cal. 2011).....................................................................12

*Brinkmeier v. BIC Corp.*,
   733 F. Supp. 2d 552 (D. Del. 2010).........................................................................19

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
   ___ F.4th ___, No. 2020-2222, 2022 WL 333669 (Fed. Cir. Feb. 4, 2022)...........12

*Cisco Sys., Inc. v. Sprint Commc'ns Co.*,
   C.A. No. 15- 431, 2016 WL 690939 (D. Del. Feb. 19, 2016) ...................................7

*Coolsystems, Inc. v. Nice Recovery Sys. LLC*,
   No. 16-cv-02958-PJH, 2016 WL 6091577 (N.D. Cal. Oct. 19, 2016) ...................16

*Dee v. Rakower*,
   112 A.D. 3d 204 (N.Y. App. Div. 2013) ................................................................20

*Diebold Nixdorf, Inc. v. Hyosung TNS, Inc.*,
   C.A. No. 19-1695-LPS, 2021 WL 861734 (D. Del. Mar. 4, 2021) ..................18, 19

*Dror v. Kenu, Inc.*,
   No. 19-cv-03043-LB, 2019 Wl 5684520 (N.D. Cal. Nov. 1, 2019).........................5

*Edmunds Holding Co. v. Autobytel Inc.*,
   598 F. Supp. 2d 606 (D. Del. 2009).........................................................................5

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)..................................................................................19

*GlycoBioSciences, Inc. v. Nycomed US, Inc.*,
  No. 11-cv-1280(JS)(GRB), 2012 WL 540928 (E.D.N.Y. Feb. 15, 2012)..............................14

*Hydranautics v. FilmTec Corp.*,
  70 F.3d 533 (9th Cir. 1995) ......................................................................................10

*In re Google*,
  588 F. App'x 988 (Fed. Cir. 2014) ............................................................................11

*In re Mobile Telecomm. Techs., LLC*,
  247 F. Supp. 3d 456 (D. Del. 2017)..........................................................................6, 7

*In re Nintendo of Am. Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014)..................................................................................11

*Innovative Therapies v. Kinetic Concepts, Inc.*,
  599 F.3d 1377 (Fed. Cir. 2010)....................................................................................8

*Intel Corp. v. Amberwave Systems Corp.*,
  233 F.R.D. 416 (D. Del. 2005) .....................................................................................9

*Intel Corp. v. Future Link Sys., LLC*,
  C.A. No. 14-377-LPS, 2015 WL 649294 (D. Del. Feb. 12, 2015)................................6, 15

*Kreider Dairy Farms, Inc. v. Glickman*,
  190 F.3d 113 (3d Cir. 1999).........................................................................................9

*Lannett Co. v. KV Pharm.*,
  C.A. No. 08-338, 2009 WL 10737496 (D. Del. Feb. 4, 2009) .......................................8

*Masimo Corp. v. Philips Electronic North America Corp.*,
  C.A. No. 09-80, 2015 WL 2406061 (D. Del. May 18, 2015)........................................16

*Medimmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)....................................................................................................4

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012)..................................................................................12

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008)......................................................................................8

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)..............................................................................6, 7, 11

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) .................................................................................20

*Microsoft Corp. v. SynKloud Techs., LLC*,
    484 F. Supp. 3d 171 (D. Del. 2020)......................................................................7, 8

*Netlist Inc. v. Samsung Elecs. Co.*,
    No. 8:20-cv-00993-MCS (C.D. Cal.)...........................................................2, 3, 5, 10

*Netlist, Inc. v. MetaRAM, Inc.*,
    C.A. No. 09-00165 (D. Del.) ....................................................................................8

*Netlist, Inc. v. Samsung Elecs. Co.*,
    No. 2:21-cv-00463 (E.D. Tex.)......................................................................... *passim*

*PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*,
    951 F. Supp. 2d 1083 (E.D. Ark. 2013)..................................................................14

*Reading Rock Northeast, LLC v. Russel*,
    No. 20-5728, 2021 WL 870642 (D.N.J. Mar. 8, 2021) ..........................................10

*Realtek Semiconductor Corp. v. LSI Corp.*,
    946 F. Supp. 2d 998 (N.D. Cal. 2013) ....................................................................20

*Ring Plus, Inc. v. Cingular Wireless Corp.*,
    614 F.3d 1354 (Fed. Cir. 2010)...............................................................................16

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007)..................................................................................................8

*Schering Corp. v. Amgen Inc.*,
    969 F. Supp. 258 (D. Del. 1997)..............................................................................12

*Sparrow v. Mazda Am. Credit*,
    385 F. Supp. 2d 1063 (E.D. Cal. 2005)...................................................................10

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011).................................................................................7

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
    630 F. Supp. 2d 395 (D. Del. 2009).........................................................................17

*SunPower Corp. v. PaneClaw, Inc.*,
    C.A. No. 12-1633, 2016 WL 5107029 (D. Del. Sept. 19, 2016) ............................16

*Therasense, Inc. v. Becton Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) .............................................................17

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
    520 F. Supp. 2d 579 (D. Del. 2007)........................................................................12

*Zadro Prods., Inc. v. SDI Techs, Inc.*,
    C.A. No. 17-1406-WCB, 2019 WL 1100470 (D. Del. Mar. 8, 2019) ..............................18, 19

**Rules and Statutes**

Fed. R. Civ. P. 15(a) .................................................................................................10

## TABLE OF ABBREVIATIONS

- "**Additional DJ Patents**" refers to U.S. Patent Nos. 10,860,506 ("the '506 patent"), 10,949,339 ("the '339 patent"), 11,016,918 ("the '918 patent"), and 11,232,054 ("the '054 patent").

- "**Breach Action**" refers to *Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.).

- "**FAC**" refers to the First Amended Complaint, D.I. 14.

- "**JEDEC**" refers to the Joint Electron Device Engineering Council

- "**JDLA**" refers to the Joint Development and License Agreement between Netlist and Samsung Electronics Co, Ltd.

- "**LRDIMM**" refers to Load Reduced Dual In-Line Memory Module, a type of accused product at issue in this case.

- "**Original DJ Patents**" refers to U.S. Patent Nos. 10,217,523 ("the '523 patent"), 10,474,595 ("the '595 patent"), 9,858,218 ("the '218 patent"), and 7,619,912 ("the '912 patent")

- "**RAND**" refers to "reasonable and non-discriminatory."

- "**RDIMM**" refers to Registered Dual In-Line Memory Module, a type of accused product at issue in this case.

- "**Samsung**" refers to Plaintiffs Samsung Electronics Co, Ltd. and Samsung Semiconductor, Inc.

- "**SEA**" refers to non-party Samsung Electronics America, Inc.

- "**SEC**" refers to Plaintiff Samsung Electronics Co, Ltd.

- "**SSI**" refers to Plaintiff Samsung Semiconductor, Inc.

- "**Texas Action**" refers to *Netlist, Inc. v. Samsung Electronics Co., Ltd.*, No. 2:21-cv-00463 (E.D. Tex.).

## <u>INTRODUCTION</u>

There is an immediate, concrete, and particularized controversy as to whether or not Samsung memory modules infringe Netlist's allegedly standard essential patents ("SEPs"). Netlist does not dispute that this controversy exists, but Netlist prefers that it proceed in Texas.

In October 2020, Netlist sent a "Notice of Infringement" alleging that "Samsung continues … to infringe Netlist's patents." FAC ¶ 31. At the time, the parties were litigating whether Samsung breached certain provisions of the Joint Development and License Agreement ("JDLA"), and whether those breaches permitted Netlist to terminate Samsung's patent license. After the Court in that litigation upheld the license termination, Samsung promptly filed this lawsuit seeking, among other things, a declaration that it does not infringe the patents identified in Netlist's Notice.

Netlist, a Delaware corporation, does not want this Court to decide this patent dispute. Two months after Samsung filed the present action, Netlist sued Samsung in the Eastern District of Texas. The three patents asserted in Texas, and those at issue in the original Complaint here, involve the same underlying science and technology, name the same inventors, are asserted against the same products, are allegedly essential to JEDEC standards, and implicate Netlist's commitment that it would license the patents on RAND terms. Netlist does not dispute that the Texas action would involve overlapping discovery, witnesses, and evidence, and the identical issue of whether Netlist has complied with its RAND obligations. To avoid inefficiencies and the risk of inconsistent results, Samsung added, in the First Amended Complaint ("FAC"), declaratory judgment claims for the patents Netlist asserts in Texas.

For all of Netlist's hyperbolic rhetoric accusing Samsung of "attempt[ing] to subvert another district court's authority," D.I. 25 at 4, it is Netlist that seeks to manipulate venue. But its attempt to forge a connection to Texas is crumbling. Although Netlist continues to confuse the issue by referring to a manufacturing facility in Austin, *see id.* at 2, Netlist no longer contends that the

accused products were designed or manufactured at that facility or elsewhere in Texas, after Samsung showed that this prior claim was untrue.  D.I. 21 at 19; D.I. 23, ¶¶ 8–9.  The sole remaining basis on which Netlist attempts to prop up the Texas Action is the presence of a Samsung entity whose role is limited to using the accused products.

Netlist has filed a scattershot motion to dismiss in an effort to shift the entire dispute to Texas.  But, as discussed below, Netlist's attempt to dispute jurisdiction or otherwise find fault with the FAC is entirely without merit.  Time and again, Netlist resorts to arguments that have been rejected by the Federal Circuit and this Court.  Netlist's motion should be denied.

## BACKGROUND

### A.    Samsung's Declaratory Judgment Complaint

Samsung filed this action to resolve a dispute initiated by Netlist regarding patents that Netlist alleges are essential to memory module standards promulgated by JEDEC.  In 2015, Netlist granted Samsung, as part of the JDLA, a perpetual, paid-up, worldwide, non-exclusive license to all Netlist patents having an effective first filing date on or prior to November 12, 2020.  FAC ¶¶ 21–22.  Netlist later purported to terminate the JDLA based on alleged breaches of a product supply requirement and the withholding of Korean taxes.  *See id.* ¶¶ 28–29.  In 2020, Netlist sued SEC for breach of the JDLA and sought a declaration that its license to Samsung was terminated.  *See Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-cv-00993-MCS (C.D. Cal.) ("Breach Action").

In October 2020, while the Breach Action was pending, Netlist sent a "Notice of Infringement" accusing Samsung of infringing Netlist's patents relating to memory technologies, including U.S. Patent Nos. 10,217,523 (the "'523 patent"), 10,474,595 (the "'595 patent"), and 9,858,218 (the "'218 patent").  FAC ¶ 31.  Netlist also demanded that Samsung enter a license.  *See id*.  Several months later, Netlist accused Samsung's customer Google of infringing U.S. Patent No. 7,619,912 (the "'912 patent"), based on Google's use of standard-compliant memory products

2

supplied by Samsung.  *Id.* ¶¶ 25–26.  Netlist has alleged that the '523, '595, '218, and '912 patents (the "Original DJ Patents") are infringed by two types of memory modules—LRDIMMs and/or RDIMMs—that practice certain JEDEC standards.  *Id.* ¶¶ 54–55.

Samsung filed this action the day after the court in the Breach Action ruled that Samsung's patent license had been terminated.[1]  FAC, ¶ 34; Breach Action, D.I. 1, ¶ 86.  The original Complaint sought a declaration that Samsung does not infringe the Original DJ Patents; a declaration that the Original DJ Patents are unenforceable due to inequitable conduct and unclean hands; and, alternatively, a ruling that Netlist has breached a contractual obligation to license its allegedly standard-essential patents and patent applications on RAND terms.  D.I. 1, ¶¶ 306–15.

### B.    Netlist's First Motion to Dismiss and Its Second-Filed Lawsuit

On December 20, 2021, Netlist filed its first motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  D.I. 10.  That same day, Netlist sued the plaintiffs here (SEC and SSI) and a related company, Samsung Electronics America, Inc. ("SEA"), in the Eastern District of Texas.  *See Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463 (E.D. Tex.) (the "Texas Action").  In the Texas Action, Netlist accused Samsung's JEDEC-compliant memory modules (including RDIMMs and LRDIMMs) of infringing U.S. Patent Nos. 10,860,506 ("the '506 patent"), 10,949,339 ("the '339 patent"), and 11,016,918 ("the '918 patent").  *See* Texas Action, D.I. 1, ¶ 38.  Netlist's Complaint states that Netlist intends to assert a fourth patent once it issued:  U.S. Patent No. 11,232,054 ("the '054 patent" and together with the '506, '339, and '918 patent, the "Additional DJ Patents").  *See id.* ¶ 32.

Netlist, a Delaware corporation based in California, has no meaningful presence in Texas.  SEC and SSI, which are responsible for designing and/or selling the relevant memory modules,

---

[1]      Netlist was awarded only $2.00 in nominal damages.  *See* Breach Action, D.I. 306 at 2.

have no meaningful connections to the Eastern District of Texas.  FAC ¶¶ 4–5.  None of the accused products were designed or manufactured in Texas.  D.I. 23, ¶¶ 8–10.  The third defendant in the Texas Action, SEA, is not involved in the design, manufacture or sale of the allegedly infringing Samsung products.  D.I. 20, ¶¶ 3–6.  Netlist concedes that it named SEA solely as a downstream "user," essentially a customer, of the accused products.  D.I. 25 at 13.

### C.    Samsung's First and Second Amended Complaints in the Present Action

On January 18, 2022, Samsung filed the FAC in the present action.  D.I. 14.  Given the overlap between the original Complaint here and the Texas Action, the FAC added claims that Samsung does not infringe the '506, '339, and '918 patents and that the '506 patent is unenforceable due to inequitable conduct and unclean hands.  *See* FAC ¶¶ 190–220, 404–38.  The FAC also added further support for the existence of declaratory judgment jurisdiction and for Samsung's unenforceability and RAND claims.

On January 25, 2022, the '054 patent (a continuation of the '918 patent) issued.  The same day, Samsung sought leave to file a Second Amended Complaint ("SAC"), which adds a non-infringement claim for the '054 patent.  D.I. 18.

## ARGUMENT

### I.    The Court Has Jurisdiction Over Every Count of the First Amended Complaint

The Court has jurisdiction over Samsung's declaratory judgment claims.  Declaratory judgment jurisdiction exists where the complaint alleges facts that "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted).

### A.     Counts I–III: non-infringement of the '523, '595, and '218 patents

Netlist cannot dispute that "there is a substantial controversy" regarding the '523, '595, and '218 patents, as Netlist issued a "Notice of Infringement" accusing Samsung of infringing these very patents.  FAC ¶¶ 30–31.  Netlist contends only that the case lacks "sufficient immediacy" because Samsung filed its original Complaint approximately a year after Netlist made its demands.  D.I. 25 at 6.  But courts regularly find that a one-year period between a patentee's assertion of its rights and the filing of a declaratory judgment complaint does not destroy jurisdiction.  *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1381 (Fed. Cir. 2012) (declining "to hold that the case or controversy between the parties sufficiently dissipated in the more than one-year passage of time").[2]  As the court in *3M* explained, "the passage of time does not counsel against finding declaratory judgment jurisdiction if the relevant circumstances surrounding the patentee's assertion of patent rights have not changed despite the passage of time."  *Id.* at 1380–81 (internal quotations and citation omitted).

Here, the "relevant circumstances" have not changed.  Samsung continues to manufacture and sell the products identified in the Notice of Infringement (LRDIMMs and RDIMMs), and Netlist has never withdrawn its allegation that Samsung infringes the three patents.  During the one-year period, the parties vigorously litigated the existence of Samsung's license, and Netlist continued to demand that Samsung take a new license.  FAC ¶¶ 27–34.  The ruling in the Breach Action that the license is terminated has only made the controversy *more* immediate.[3]

---

[2]       *See also Ass'n for Molecular Pathology v. USPTO*, 653 F.3d 1329, 1346 (Fed. Cir. 2011); *Dror v. Kenu, Inc.*, No. 19-cv-03043-LB, 2019 Wl 5684520, at *8 (N.D. Cal. Nov. 1, 2019).

[3]       *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606 (D. Del. 2009), on which Netlist relies, is inapplicable.  There, the Court found jurisdiction lacking because, unlike Netlist, the patentee had not served an infringement notice or otherwise demonstrated any intent to enforce its patents against the plaintiff.  *See id.* at 610.

**B.      Count IV: non-infringement of the '912 patent**

Netlist wrongly submits that "the sole basis" for jurisdiction over Count IV, which concerns the '912 patent, is an indemnification request.  D.I. 25 at 7.  To the contrary, the FAC alleges—and Netlist does not dispute—that Netlist's recently amended infringement contentions in its case against Google accuse, for the first time, standard-compliant DDR4 products of infringing the '912 patent—specifically, claim 16, which is an apparatus claim.  FAC ¶¶ 14, 40–41; *see also* FAC, Ex. 8 at 1.  Nor does Netlist dispute that its new allegations implicate Google's use of standard-compliant DDR4 products supplied by Samsung.  *Id.* ¶¶ 14, 40–41.

These undisputed facts establish the existence of an actual, substantial, and immediate controversy between Netlist and Samsung as to the '912 patent.  The Federal Circuit and Courts in this District have found jurisdiction over a manufacturer's declaratory judgment action based on infringement suits against a customer.  *See, e.g.*, *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 903 (Fed. Cir. 2014); *Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011); *In re Mobile Telecomm. Techs., LLC*, 247 F. Supp. 3d 456, 461–62 (D. Del. 2017); *Intel Corp. v. Future Link Sys., LLC*, C.A. No. 14-377-LPS, 2015 WL 649294, at *7 (D. Del. Feb. 12, 2015).  In *Future Link*, the Court reasoned that, because the patentee "has accused [customers] of infringement based solely on the use and sale of [the manufacturer's] components, there is necessarily an implied accusation that [the manufacturer] itself has also directly infringed the [patent]."  2015 WL 649294, at *7.  Similarly, here, Netlist's contention that Google infringes an apparatus claim by using standard-compliant DDR4 products necessarily implies an allegation that Samsung infringes the same claim by making, selling, or importing such products.

The Court in *Mobile Telecommunications* rejected the argument raised by Netlist here that there must be "an actual indemnification obligation" before a declaratory judgment action may be filed.  D.I. 25 at 7.  As the Court explained:  "The existence of indemnification obligations … are not

prerequisites for establishing subject matter jurisdiction in such situations.  A declaratory judgment supplier plaintiff may have standing to sue a patentee for non-infringement based on the nature of the patentee's accusations against the supplier's customer."  *Mobile Telecomm.*, 247 F. Supp. 3d at 461–62.  This is consistent with the two cases Netlist cites, both of which considered whether customer suits gave rise to jurisdiction independent of any indemnification demands.  *See Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 183–87 (D. Del. 2020); *Cisco Sys., Inc. v. Sprint Commc'ns Co.*, C.A. No. 15- 431, 2016 WL 690939, at *2 (D. Del. Feb. 19, 2016).

Netlist is also wrong that Samsung must intervene in the customer suit.  D.I. 25 at 7.  Not only is a declaratory judgment action by the manufacturer *permitted*, it is *encouraged*.  Under the "customer-suit exception" to the first filed rule, a declaratory judgment action "brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (internal quotations and citation omitted).  Such suits are preferred (1) because of the manufacturer's "greater interest in defending its actions against charges of patent infringement;" (2) "to guard against the possibility of abuse" from customer suits; and (3) to promote "efficiency and judicial economy."  *Id.* (internal quotations and citation omitted).  Netlist misreads *DataTern* as requiring intervention in the customer suit.  To the contrary, the Federal Circuit in *DataTern upheld* the exercise of jurisdiction over separate declaratory judgment cases filed by manufacturers.  *See* 755 F.3d at 903 ("We agree with [the manufacturers] that the claim charts in the customer suits strongly support the conclusion that the district court [in the manufacturer cases] had jurisdiction.").

Netlist's litigation campaign against Samsung's competitors—including Netlist's previous assertions of each of the Original DJ Patents—further supports the exercise of jurisdiction.  FAC ¶¶ 13, 15, 17–18.  Netlist argues that "[m]ere allegations of a litigation campaign do not confer

jurisdiction." D.I. 25 at 8. But Netlist cannot deny that a patentee's history of lawsuits against other, similarly situated parties *is* a relevant consideration in determining declaratory judgment jurisdiction. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (finding jurisdiction based in part on the fact that "after receiving several threats itself, Micron watched MOSAID sue each of the other leading DRAM manufacturers"); *SynKloud*, 484 F. Supp. 3d at 180 ("A patentee's aggressive enforcement strategy, even in the absence of direct threats against the declaratory judgment plaintiff, may support jurisdiction.").[4]

### C.    Counts V–VII: non-infringement of the '506, '339, and '918 patents

Netlist cannot dispute that when Samsung filed its FAC on January 18, 2022, there was a sufficient case or controversy as to the '506, '339, and '918 patents, as Netlist had asserted these patents in the Texas Action. Netlist instead insists jurisdiction must have existed "at the time the original complaint was filed." D.I. 25 at 8–9. Netlist is wrong.

The Supreme Court has instructed that when "a plaintiff files a complaint in federal court and voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). Even the cases cited by Netlist recognize that jurisdiction must be determined "[a]t the time the complaint under consideration was filed." *Lannett Co. v. KV Pharm.*, No. 08-338, 2009 WL 10737496, at *4 (D. Del. Feb. 4, 2009). The relevant question is "whether there was a case or controversy between the parties *at the time the Amended Complaint was filed.*" *Id.* (emphasis added).[5] Because it is undisputed that a case or controversy existed at that time, Netlist's argument fails.

---

[4]    Since 2009, Netlist has filed 14 patent infringement actions in five district courts—including a case in this district asserting a patent related to the '912 patent—and at the ITC. *See Netlist, Inc. v. MetaRAM, Inc.*, C.A. No. 09-00165 (D. Del.) (asserting U.S. Pat. No. 7,289,386).

[5]    Netlist continues to cite a case for the unremarkable proposition that jurisdiction is evaluated at the time a particular claim is made and not after its filing. *See* D.I. 22 at 4 n.1; D.I. 25 at 9. The

Netlist erroneously conflates subject matter jurisdiction with the relation back doctrine for purposes of the first-to-file rule.  D.I. 25 at 9.  In *Intel Corp. v. Amberwave Systems Corp.*, this Court held that a new declaratory judgment claim in an amended complaint related back to the original complaint even though the new claim (non-infringement of a patent that issued while the case was pending) arose *after* the filing of the original complaint.  233 F.R.D. 416, 418–19 (D. Del. 2005).  As the court explained in rejecting the very argument Netlist makes here, "*GAF* does not hold that a case in which subject matter jurisdiction already exists cannot be supplemented by adding a dispute over a later-issued patent, nor does it hold that, when such supplementation occurs, relation back to the original filing date is inappropriate for purposes of determining which of the two competing suits should go forward."  *Id.* at 419.[6]

### D.     Counts VIII–XII: unenforceability of the '523, '218, '595, '912, and '506 patents and breach of contract

Netlist's motion to dismiss Samsung's unenforceability claims (Counts VIII–XI) and breach of contract claim (Count XII) is entirely contingent on the dismissal of Samsung's non-infringement claims (Counts I–VII) for lack of jurisdiction.  *See* D.I. 25 at 9–10.  As jurisdiction exists over Counts I–VII, the Court also has jurisdiction over the other claims.

## II.     The Court Should Exercise Jurisdiction Over the Declaratory Judgment Claims

The Court should reject Netlist's request to decline declaratory judgment jurisdiction.

---

cited case, *Innovative Therapies v. Kinetic Concepts, Inc*., 599 F.3d 1377 (Fed. Cir. 2010), does not hold that jurisdiction must be shown prior to making an actual claim.

[6]     Netlist's reliance on *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113 (3d Cir. 1999), is misplaced. *Kreider* held that where an *original* complaint lacked jurisdiction for the claims asserted therein, a subsequent amended complaint could not relate back. *See id.* at 121. Unlike in *Kreider*, the Court here had jurisdiction over the original Complaint.

### A.      This case does not interfere with the Breach Action

Netlist's contention that Samsung brought this action to "interfere with the jurisdiction" of Judge Scarsi is incoherent.  D.I. 25 at 10.  Nothing in the FAC challenges, or has any impact whatsoever, on Judge Scarsi's jurisdiction over the Breach Action. Indeed, the FAC acknowledges Judge Scarsi's order granting summary judgment in favor of Netlist.  FAC ¶ 34.  Although Samsung is appealing that order, *see* Breach Action, D.I. 309, Samsung does not dispute that, unless and until the judgment is vacated, the decision in that case is binding.

Samsung's RAND claim was not a compulsory counterclaim in the Breach Action. *See* D.I. 25 at 11–12.  A counterclaim is compulsory only if "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995).  The test is not met where "the legal issues and evidence relating to the claims are considered sufficiently distinct."  *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1068 (E.D. Cal. 2005).

Here, Samsung's RAND claim involves entirely different legal issues and evidence than Netlist's claim in the Breach Action that termination of the JDLA was effective.  In the present case, Samsung seeks a ruling that, *following termination*, Netlist must comply with its contractual commitment to license its alleged SEPs on RAND terms.  Because the claims involve different contracts (the JDLA versus Netlist's RAND commitment to JEDEC) and different conduct that occurred in different time periods—including, for Samsung's RAND claim, a threshold finding that Netlist's patents are essential and infringed—the claims do not "arise[] out of the transaction or occurrence."  Fed. R. Civ. P. 15(a); *see Reading Rock Northeast, LLC v. Russel*, No. 20-5728, 2021 WL 870642, at *5 (D.N.J. Mar. 8, 2021) ("[C]ourts have recognized that claims arising from separate contracts are not compulsory counterclaims and therefore can be tried in separate forums."); *Alkana v. ING Bank, F.S.B.*, No. 10-04079, 2010 WL 11601042, at *14 (C.D. Cal. July 30, 2010) ("As

Rule 13(a) requires that a compulsory counterclaim arise out of the same 'transaction,' it follows logically that separate contracts constitute separate 'transactions.'").

**B.      This case does not interfere with the jurisdiction of Judge Seeborg**

Netlist next submits that this suit interferes with Netlist's patent infringement case against Google involving the '912 patent.  D.I. 25 at 12.  Netlist has it backwards.  The Federal Circuit has held that a manufacturer's suit—even if later-filed—"generally takes precedence" over the suit against the customer.  *In re Nintendo of Am. Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).  The case cited by Netlist as purportedly "reject[ing] this exact litigation tactic," D.I. 25 at 12, *upheld* the exercise of declaratory judgment jurisdiction as to separate, and second-filed, actions by two manufacturers. *DataTern*, 755 F.3d at 905.

**C.      This Court can resolve the entire case; SEA is unnecessary**

Netlist's assertion that SEA is necessary for complete relief, D.I. 25 at 12, fails for similar reasons.  It is undisputed that SEA in not involved in the design, manufacture, or sale of products at issue.  D.I. 20, ¶¶ 5–6.  Rather, Netlist admits that it named SEA in the Texas Action because it allegedly "us[es] the infringing products" in its business operations, D.I. 25 at 13; in other words, it is no different than any other Samsung customer.  Again, the Federal Circuit has made clear, in ordering stays of customer suits, that the customer is not the "true defendant" and should not suffer "the burdens of trial." *Nintendo*, 756 F.3d at 1365; *see also In re Google*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (ordering stay of customer suits pending resolution of manufacturer's declaratory judgment action).  Netlist's claim that it needs SEA to obtain "complete relief," D.I. 25 at 16, is contrary to the law.[7]  *See Nintendo*, 756 F.3d at 1366 ("[T]he district court recognized … that if [the patentee] were

---

[7]      The Texas facility that Netlist mentions, D.I. 25 at 13, is irrelevant, as Netlist no longer contends that the accused products are designed or made in Texas.  Samsung has shown that the accused products are designed and made outside of the U.S.  D.I. 23, ¶¶ 8–9.

to collect royalties from [the manufacturer], this would preclude suit against the Retailers."); *see also*

*Cal. Inst. of Tech. v. Broadcom Ltd.*, ___ F.4th ___, No. 2020-2222, 2022 WL 333669, at *12 (Fed.

Cir. Feb. 4, 2022) ("Once full recovery is obtained from one infringer with respect to a particular

infringing device, at most nominal additional damages may be awarded against another with respect

to the same device.").

    **D.**    **This case, not Netlist's Texas Action, is the first filed**

       Counts V–VII and XI, involving the '506, '339, and '918 patents, are properly part of

this case, which was filed two months before the Texas Action.  Thus, the claims should proceed in

Delaware under the first-to-file rule.  *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir.

2012) ("The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions

and promote judicial efficiency.").

       Although Netlist cannot dispute that this case was filed first, Netlist argues that its

Texas Action takes precedence as to the Additional DJ Patents because they do not relate back to the

original Complaint in the present action.  D.I. 25 at 14.  Netlist's argument fails for multiple reasons.

       As an initial matter, courts—including in this District—have explained that "when

investigating a first-filed issue, relation back analysis is unnecessary, because the 'point of inquiry is

the original complaint, not the amended complaint.'"  *Time Warner Cable, Inc. v. USA Video Tech.*

*Corp.*, 520 F. Supp. 2d 579, 585 n.48 (D. Del. 2007) (quoting *Schering Corp. v. Amgen Inc.*, 969 F.

Supp. 258, 267 (D. Del. 1997)); *see also Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 987

(N.D. Cal. 2011) (citing cases).  Because the original Complaint in the present case was filed first, this

case is the first filed action as to both the original claims and all claims added by amendment—

regardless of whether those claims relate back.

       Samsung's claims on the Additional DJ Patents are also first filed under a relation back

analysis.  *See Barnes & Noble*, 823 F. Supp. 2d at 988 ("Other courts have applied the relation back

doctrine to determine which case is filed first.").  Under the relation back doctrine, "newly alleged claims, based on separate patents, relate back to the date of the original complaint" when "the general factual situation or the aggregate of operative facts underlying the original claim for relief [gives] notice to [the other party] of the nature of the allegations it was being called upon to answer."  *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1369–70 (Fed. Cir. 2019).  The relevant factors include "the overlap of parties, the overlap in the accused products, the underlying science and technology, time periods [of alleged infringement], and any additional factors that might suggest a commonality or lack of commonality between the two sets of claims."  *Id.* at 1369.

As Samsung showed in its briefs in support of its motion for leave to file the SAC, nearly all the factors favor application of the doctrine to Samsung's amended allegations.  D.I. 19 at 11–17; D.I. 22 at 4–7.  Indeed, Netlist does not dispute the following facts supporting relation back:

- Both this case and the Texas Action involve Netlist, SEC, and SSI.

- All the patents concern dual in-line memory modules.

- The two sets of patents share common named inventors, including Hyun Lee, Jayesh Bhakta, and Jeffrey Solomon.  *See* FAC, Exs. 1–7; D.I. 18.1 ("SAC"), Ex. 45.

- The same prosecuting attorney (Jamie Zheng) is identified on all but two of the patents. *See* FAC, Ex. 1–6.

- Both this case and the Texas Action involve Samsung RDIMM and LRDIMM products.  *Compare* FAC ¶ 58 *with* Texas Action, D.I. 1, ¶¶ 36–38.

- The relevant time periods in this case and the Texas Action substantially overlap (*e.g.*, both sets of claims concern sales following the purported termination of the license).

- Netlist contends all the patents are essential to JEDEC standards, including some of the same standards across both sets of patents.  *Compare* FAC, ¶ 63 (JESD82-32) *with* Texas Action, D.I. 1, ¶¶ 46, 61 (same); *compare* FAC, ¶ 75 (JESD79-4C) *with* Texas Action, D.I. 1, ¶ 59 (same).

- All the patents implicate Samsung's RAND-based breach of contract claim.

- Many of the same witnesses and documents, including manufacturing and sales data, will be required for both sets of patents.

Unable to dispute the significant overlap, Netlist focuses on irrelevant details. Netlist's arguments find no support in the law.

*First*, Netlist mistakenly relies on its addition of SEA in the Texas Action.  D.I. 25 at 16.  But the first filed rule and the relation back doctrine do "not require *identical* complaints but rather 'substantial overlap' of the parties."  *GlycoBioSciences, Inc. v. Nycomed US, Inc.*, No. 11-cv-1280(JS)(GRB), 2012 WL 540928, at *2 (E.D.N.Y. Feb. 15, 2012).  As explained above (*supra* § II.C), SEA has no meaningful role in this dispute and is not necessary to "provide complete relief."  D.I. 25 at 16.

*Second*, Netlist's assertion that the Original DJ Patents and the Additional DJ Patents are not part of the same patent family is inconsistent with the law, which focuses not on the family relationship of the patents but on the similarity of the "underlying science and technology."  *Anza*, 934 F.3d at 1369.  For example, in *PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, the court applied the relation back doctrine to an additional patent—the Ehret Patent—because, despite "not [being] related to the patents in PerfectVision's original complaint [and] not [being] a member of those patents' families … the fact remains that the evidence presented and the technological knowledge needed will be substantially similar in determining whether the [accused device] infringes the Ehret Patent and whether it infringes the patents named in the original complaint."  951 F. Supp. 2d 1083, 1093–94 (E.D. Ark. 2013).  Similarly, here, the family relationships are of no moment, given the common inventorship, the common accused products, and the undeniable overlap in the memory technology underlying both sets of patents.

*Third*, Netlist doubles down on its erroneous assertion that the claims on the Original DJ Patents do not involve DDR5 products.  D.I. 25 at 14–15.  Samsung made clear—before Netlist filed its motion to dismiss—that this claim is inaccurate:  As pled in the FAC, Samsung's claims on

the Original DJ Patents involve both DDR4 and DDR5 LRDIMM and RDIMM products.[8]  D.I. 22

at 5–6 (citing FAC ¶ 58).  Moreover, Netlist ignores that two of the Additional DJ Patents are asserted

against Samsung's DDR4 products.  *See* Texas Action, D.I. 1, ¶¶ 36–37.

        Similarly, Netlist incorrectly suggests that there is "no factual overlap" between the

adoption of the DDR4 and DDR5 standards.  D.I. 25 at 15–16.  This is at odds with the standards

themselves.  *See* Exhibit 1, Standard 79-5A at 1 ("*This [DDR5] standard was created based on the*

*DDR4 standards* (JESD79-4) and some aspects of the DDR, DDR2, DDR3 & LPDDR4 standards

(JESD79, JESD79-2, JESD79-3 & JESD209-4).*"* (emphasis added)).

        *Fourth*, Netlist's argument that the Original DJ Patents and Additional DJ Patents

"implicate different functionalities," D.I. 25 at 15, and "relate to entirely distinct portions of [JEDEC]

specifications," *id.* at 17, does not reflect the law or the facts.  The relevant factor is the similarity of

the "underlying science and technology," not hyper-technical and granular details.  *Anza*, 934 F.3d

at 1369.  It is undisputed that the patents relate to the same area of technology—memory modules—

and share common named inventors.  Nor does Netlist dispute that it contends that all the patents are

essential to JEDEC standards relating to memory modules, including some of the same standards

across both sets of patents.  At bottom, "only the narrowest and most artificial view of the issues could

support th[e] assertion" that the underlying technology is dissimilar.  *Intel*, 233 F.R.D. at 418.  "[A]t a

minimum, presentations on infringement for both [sets of] patents will require a judge … and a jury

… to become familiar with the same field of art." *Id.*

## III.     Samsung Has Stated Claims for Unenforceability

        The Court should deny Netlist's motion to dismiss Samsung's unenforceability claims.

---

[8]     Netlist has publicly stated that the '912 patent reads on DDR5 memories.  *See* D.I. 22 at 6 n.4.

### A.    The '912 patent

The FAC alleges that during reexamination proceedings of the '912 patent, Netlist prosecuting attorneys knowingly misled the Patent Office by characterizing claim amendments as *narrowing* the claims to distinguish the prior art and secure issuance of a Reexamination Certificate. FAC ¶¶ 376–93.  The FAC further alleges that, following reexamination, Netlist argued in litigation (to avoid intervening rights) that the amendments were *not* narrowing because the limitations added by those amendments were allegedly inherent in the original claims.  *Id.* ¶¶ 394–401.  Netlist does not dispute any of these allegations in the FAC.  Instead, Netlist claims that attorney argument cannot form the basis for inequitable conduct.  D.I. 25 at 18.  Netlist is mistaken.

"Although an attorney is free to argue vigorously in favor of patentability without being subject to allegations of inequitable conduct, the law prohibits genuine misrepresentations of material fact."  *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1360–61 (Fed. Cir. 2010) (internal quotations and citation omitted) (finding that misrepresentation regarding prior art reference was "outside the bounds of permissible attorney argument"); *see also Coolsystems, Inc. v. Nice Recovery Sys. LLC*, No. 16-cv-02958-PJH, 2016 WL 6091577, at *5 (N.D. Cal. Oct. 19, 2016) (finding alleged "materially false" statement by prosecuting attorney sufficient to state a claim).[9]  Here, Netlist made such impermissible misrepresentations when it "knowingly misrepresented the amendments in its arguments to the PTAB and the Federal Circuit."  FAC ¶ 400.

---

[9]    The cases on which Netlist relies do not support dismissal.  In *SunPower Corp. v. PaneClaw, Inc.*, C.A. No. 12-1633, 2016 WL 5107029, at *10 (D. Del. Sept. 19, 2016), the Court dismissed an inequitable conduct claim because the prosecuting attorney did not make an affirmative misrepresentation of material fact, but instead offered an interpretation of the prior art.  In *Masimo Corp. v. Philips Electronic North America Corp.*, C.A. No. 09-80, 2015 WL 2406061, at *1 (D. Del. May 18, 2015), the Court's ruling was made following a two-day bench trial, and not at the pleading stage where the Court must accept all the factual allegations as true.

The FAC also alleges that the '912 patent is unenforceable based on unclean hands. *Id.* ¶¶ 370–403. Netlist argues that the unclean hands allegations are "insufficient for the same reasons," D.I. 25 at 18, but unclean hands is governed by a different standard than inequitable conduct. *See, e.g.*, *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (*en banc*) (unclean hands remains available to supply a remedy for egregious misconduct and does not require application of the standards governing inequitable conduct). Here, the FAC sufficiently states a claim for unclean hands because it alleges deceit and bad faith on the part of Netlist—in obtaining the Reexamination Certificate for the '912 patent and later arguing that the reexamination did not narrow the claims—and the alleged misconduct is directly related to Netlist's recent assertions that Samsung's DDR4 memory modules infringe the patent. *See, e.g.*, *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 410 (D. Del. 2009) (refusing to strike unclean hands defense involving bad faith acts directly related to infringement claims).

## B.      The '523, '218, '595, and '506 patents

Netlist's motion offers similar generic arguments for the remaining three unenforceability claims. D.I. 25 at 18–20. The FAC, however, sets forth sufficient facts to show that (1) the withheld prior art is "but-for" material to the patentability, and (2) the individuals specifically intended to deceive the Patent Office. FAC ¶¶ 221–78 (Count VIII), 279–369 (Count IX), 404–38 (Count XI).

### 1.      The FAC alleges "but-for" materiality

Netlist is wrong that Samsung did not adequately explain "how" and "why" the prior art references withheld during prosecution were relevant. D.I. 25 at 18–19. Netlist's argument relies on selective quotations from the FAC and overlooks the detailed alleged in the FAC.

For the '523 patent, Netlist ignores Samsung's explanation that "Ellsberry discloses memory modules with distributed data buffers ('data handlers') between the memory devices and data

edge connections on the module, as well as the details of conventional module components/ interconnections called for by the '523 patent claims" and that the prior art of record did not teach such modules.  FAC ¶ 270; *see also id.* ¶ 274 (providing similar explanation for Jeddeloh752).  Netlist also overlooks Exhibit 28, which contains a 106-page petition for *inter partes* review ("IPR") explaining in detail how the claims of the '523 patent are obvious over Ellsberry and Jeddeloh752, and Exhibit 29, which is the PTAB's 46-page decision instituting review of the '523 patent based on these references.  FAC ¶¶ 270–76, Exs. 28, 29.

For the '218 and '595 patents, Samsung again supports its allegations by attaching complete IPR petitions that provide sufficient detail that the PTAB instituted review of both patents. *Id.* ¶¶ 328–34, 342–47, Exs. 36–41.  And for references that were not at issue in the IPR proceedings, Samsung sets forth specific facts demonstrating that the references are material to patentability and not cumulative.  *Id.* ¶¶ 335–40, 348–53, 355–59.

For the '506 patent, the FAC sets forth facts showing that the withheld prior art is but-for material to patentability.  *Id.* ¶¶ 430–35.  Samsung alleges, for example, that the withheld art teaches the precise features that the examiner determined were missing in the prior art of record.  *Id.* ¶ 435.

### 2.    The FAC alleges specific intent to deceive the Patent Office

In arguing that the FAC presents "boilerplate" allegations that the named individuals had an intent to deceive the Patent Office, D.I. 25 at 19–20, Netlist overlooks the many facts set forth in the FAC that give rise to a reasonable inference of deceptive intent.

"In this district, an inequitable conduct claim is rarely disallowed at the pleading stage due to the failure to adequately allege scienter."  *Zadro Prods., Inc. v. SDI Techs, Inc.*, C.A. No. 17-1406-WCB, 2019 WL 1100470, at *5 (D. Del. Mar. 8, 2019).  At the pleading stage, "the Court only assesses whether the facts as pled give rise to a reasonable inference that material information was misrepresented with the specific intent … to deceive the PTO."  *Diebold Nixdorf, Inc. v. Hyosung TNS,*

*Inc.*, C.A. No. 19-1695-LPS, 2021 WL 861734, at *4 (D. Del. Mar. 4, 2021) (internal quotation and citation omitted). Here, the requisite specific intent can be inferred from allegations that the named inventors and/or prosecuting attorneys (1) learned about relevant prior art during prosecution of related Netlist patents or attendance at JEDEC meetings, (2) were aware of the materiality of the prior art to the then-pending claims, and (3) deliberately withheld the prior art from the Patent Office to ensure issuance of the patent, as part of a scheme to monetize Netlist's patents through litigation against the industry. *See, e.g.*, FAC ¶¶ 269–72, 273–76, 335–41, 342–47, 348–54, 355–60, 361–67, 430–36. Allegations of this nature are sufficient at the pleading stage. *See, e.g.*, *Diebold*, 2021 WL 861734, at *4; *Zadro*, 2019 WL 1100470, at *3–5.

The present case is distinguishable from *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), on which Netlist relies. D.I. 25 at 20. In *Exergen*, the inequitable conduct claims were deficient for failing to identify "who" withheld "what" information and "why" the withheld information would have been material to the examiner. 575 F.3d at 1329–30. The pleading therefore lacked any factual basis to infer that any individual even knew of the withheld information. *See id.* at 1330. As set forth above, the FAC suffers none of the same deficiencies.[10]

## IV.     Samsung Has Stated a Claim for Breach of Netlist's RAND Obligations

Netlist does not dispute that Count XII—which pleads a claim for breach of contract resulting from Netlist's failure to offer a license to its alleged SEPs on RAND terms—alleges each element of a breach of contract claim: (1) there exists a "binding contract between Netlist and JEDEC" to which "Samsung is a third-party beneficiary," FAC ¶¶ 445–46; (2) JEDEC promulgated the

---

[10]     *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552 (D. Del. 2010), is distinguishable on similar grounds. In *Brinkmeier*, a false marking case, the plaintiff failed to identify any individuals who knew that the patents had expired or that defendant's product was marked with expired patents. *See id.* at 563–64. Here, by contrast, Samsung identified the "who" for each inequitable conduct claim and alleged facts from which a court may infer that the individual had the intent to deceive.

standards to which Netlist asserts its patents are essential, *id.* ¶ 53; (3) Netlist has breached its contract, *id.* ¶¶ 448–50; and (4) Samsung has suffered damages as a result of the breach, *id.* ¶ 451. *See Dee v. Rakower*, 112 A.D. 3d 204, 208–09 (N.Y. App. Div. 2013) (reciting elements of breach of contract under New York law).

Netlist's one-sentence argument that Samsung has "ple[d] itself out of the claim," D.I. 25 at 20, has no merit. The fact that the parties at one time had a license, or that Netlist "asked [Samsung] to take a license after termination," does not preclude Samsung's RAND claim, which is premised on, among other things, Netlist's failure, *after termination*, to offer a *RAND-compliant* license to Samsung. FAC ¶¶ 440, 448.

Netlist is also wrong that Samsung pleads no basis "for an obligation not to seek injunctive relief." D.I. 25 at 20. The FAC alleges that Netlist has an obligation to offer all implementers of JEDEC standards a license under RAND terms.[11] FAC ¶ 113. Courts have recognized that an injunction request can violate such a RAND obligation. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 885 (9th Cir. 2012) ("injunctive relief against infringement is arguably a remedy inconsistent with the [RAND] licensing commitment"); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1006 (N.D. Cal. 2013) ("the act of seeking injunctive relief…is inherently inconsistent" with RAND obligations).

## CONCLUSION

For these reasons, Netlist's motion to dismiss the FAC should be denied.

---

[11]     Netlist also mischaracterizes Samsung's breach of contract claim, in arguing that Samsung lacks standing to "bring a claim on behalf of Google." D.I. 25 at 10. Samsung asserts the RAND claim on account of its own injury in fact.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Brian Nester
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-6000

Alice J. Ahn
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA  94105-2533
(415) 591-6000

March 2, 2022

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 2, 2022, upon the following in the manner indicated:

Karen E. Keller, Esquire        *VIA ELECTRONIC MAIL*
Andrew E. Russell, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

*/s/ Rodger D. Smith II*
———————————————————
Rodger D. Smith II (#3778)