IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG SEMICONDUCTOR, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 21-1453-RGA |
| NETLIST, INC., | ) ) | |
| Defendant. | ) ) | |

**REPLY BRIEF IN SUPPORT OF NETLIST, INC.'S MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (D.I. 14)**

Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorney for Defendant*

Dated: March 9, 2022

**TABLE OF CONTENTS**

**Page**

I.     Counts I-III Non-Infringement of the '523, '595 and '218 Patents Should be Dismissed .................................................................................................................. 1

II.    The Court Should Dismiss Count IV: Non-Infringement of the '912 Patent ................. 3

III.   There is No Subject Matter Jurisdiction over the Texas Patents ..................................... 6

IV.   The Court Should Use Its Discretion to Dismiss the Complaint ..................................... 8

       A.     Samsung's Complaint Interferes with Judge Scarsi's Authority ......................... 8

       B.     Samsung's Complaint Interferes with Chief Judge Seeborg's Authority ............. 8

       C.     Only a Texas Court Can Resolve All Claims Relating to the Texas Patents ........ 8

       D.     The Delaware Action Is Not the First-Filed Action ........................................... 10

V.     Conclusion ................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*3M Co. v. Avery Dennison Corp.*,
  673 F.3d 1372 (Fed. Cir. 2012)..................................................................1, 2, 3

*Anza Tech., Inc. v. Mushkin, Inc.*,
  934 F.3d 1359 (Fed. Cir. 2019)..................................................................10

*Arris Grp., Inc. v. British Telecomms. PLC*,
  639 F.3d 1368 (Fed. Cir. 2011)..................................................................4

*Freeman v. Nw. Acceptance Corp.*,
  754 F.2d 553 (5th Cir. 1985) ..................................................................9

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*,
  90 F.3d 479 (Fed. Cir. 1996)..................................................................7

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
  599 F.3d 1377 (Fed. Cir. 2010)..................................................................5, 7

*Intel Corp. v. Amberwave Sys. Corp.*,
  233 F.R.D. 416 (D. Del. 2005) ..................................................................7, 8

*Intel Corp. v. Future Link Sys., LLC*,
  No. 14-cv-377, 2015 WL 649294 (D. Del. Feb. 12, 2015)..................................................................4

*Lannett Co. v. KV Pharm.*,
  No. 08-cv-338, 2009 WL 10737496 (D. Del. Feb. 4, 2009)..................................................................6, 7

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012)..................................................................10

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)..................................................................4, 5

*In re Mobile Telecomm. Techs., LLC*,
  247 F. Supp. 3d 456 (D. Del. 2017)..................................................................4

*Monsanto Co. v. McFarling*,
  488 F.3d 973 (Fed. Cir. 2007)..................................................................9

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007)..................................................................6

**Page(s)**

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011)..............................................................................5

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
  520 F. Supp. 2d 579 (D. Del. 2007).........................................................................1

**Statutes**

28 U.S.C. § 1400(b) .........................................................................................................1

**Rules**

Fed. R. Civ. R. 8(c) .........................................................................................................8

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 587 (D. Del. 2007)—a case Samsung commends to this Court—states it succinctly: "[C]ourts are burdened by the cases they must take on and 'should therefore not be called upon to duplicate each other's work in cases involving the same issues.'" Samsung's action throws this principle in the wastebin.

Counts I-III relate to the patents referenced in a letter related to the JDLA[1] termination process: the '523, '595 and '218 patents. Samsung uses these improper declaratory judgment claims as a hook for Count XII, in which it pleads license rights that allegedly survive Netlist's termination of the JDLA. Judge Scarsi is in the best position to determine whether the license termination correspondence creates jurisdiction and whether any claim for license survives his express rulings that Samsung waived all affirmative defenses to this termination.

Count IV relates to the '912 patent. Chief Judge Seeborg has already heard extensive oral argument on the identical issues Samsung is presenting to this Court. *Netlist, Inc. v. Google LLC*, No. 09-cv-5718, D.I. 254 (N.D. Cal. Mar. 3, 2022). Samsung does not claim there are any additional product designs subject to Count IV beyond those it allegedly supplies to Google.

Counts V-VII relate to the Texas Patents. This Court lacks jurisdiction over these claims. Further, under 28 U.S.C. § 1400(b), as between the Central District, Delaware, and Texas, an action against all Samsung entities for patent infringement can only practically proceed in Texas.

## I.   Counts I-III Non-Infringement of the '523, '595 and '218 Patents Should be Dismissed

With respect to the '523, '595, and '218 patents, Samsung relies solely on a letter sent 17 months ago which it conspicuously did not file with this Court. D.I. 27 at 12 (citing FAC ¶¶ 30–31). Importantly, Samsung does not dispute that the letter solely invited Samsung to engage in "formal licensing discussions." D.I. 25 at 12. The facts of *3M Co. v. Avery Dennison Corp.*, cited

---

[1] All abbreviations used herein are defined in Netlist's Opening Brief (D.I. 25).

by Samsung, show why it has not sufficiently plead immediacy.  673 F.3d 1372, 1376 (Fed. Cir. 2012).  The Federal Circuit emphasized that "there is no bright line rule to determine whether a declaratory judgment action satisfies Article III's case-or-controversy requirements[.]"  *Id.*  The Court noted that a year before suit there was an allegation of infringement as to a particular product—retroreflective sheeting known as "3M's Diamond Grade."  *Id.* at 1375.  A year later, right before it filed suit "3M became aware that Avery planned to launch a competing retroreflective sheeting product."  *Id.*  3M then asked "if Avery [would] provide[] 3M with a covenant not to sue.[] Avery did not respond.[] 3M's outside litigation counsel also inquired if Avery planned to sue 3M for infringement of the Heenan patents.[] Avery's counsel did not answer 3M's question."  *Id.* at 1375.  This was against a backdrop in which "the parties ha[d] a history of patent litigation," including a lawsuit filed by Avery on another 3M product just months before the declaratory judgment action.  *Id.* at 1375–76.  At the time of the original complaint, Netlist had never filed a patent lawsuit against Samsung.

In this context, the Federal Circuit made two relevant observations.  First, as to the passage of time, "the relevant circumstances surrounding Avery's assertion of its patent rights appear to have remained unchanged during the over one-year period between Avery's assertion of patent rights and 3M's filing of the declaratory judgment complaint."  *Id.* at 1381.  In contrast, Samsung's relevant circumstances have changed significantly.  Since the 17-month-old licensing letter Samsung cites as the basis for jurisdiction, Samsung and Netlist "vigorously litigated" a case in which Samsung could have sought—but chose not to—a declaration of non-infringement before Judge Scarsi.  D.I. 27 at 12.  This included the period after Netlist filed its notice of termination and after Judge Scarsi affirmed the proper contractual termination on summary judgment while other claims were still pending before him.  During this period, Netlist also litigated these patents

against and then settled with SK Hynix, and still did not sue Samsung.  FAC ¶¶ 13, 39.  Moreover, Samsung's FAC alleges that the PTAB initiated IPR proceedings on the '523, '595, and '218 patents, which were only terminated because of the SK Hynix settlement, and that Samsung re-filed petitions before the PTAB on these same patents.  *Id*. ¶ 39.  Netlist never communicated again with Samsung regarding the '523, '595, and '218 patents, and never initiated a lawsuit against Samsung regarding them—not after the notice of termination, not after Judge Scarsi's summary judgment affirming the termination, and not even after Judge Scarsi entered final judgment in Netlist's favor on all its claims three weeks ago.  The evidence as plead in the FAC makes clear that Netlist is not threatening an infringement suit against Samsung based on these patents.

This leads to the second important holding of *3M*: the Federal Circuit **refused** to rule that the district court "would abuse its discretion if on remand [the district court] declined to exercise jurisdiction over 3M's declaratory judgment action, should it determine that such jurisdiction exists," recognizing that the facts would need to be developed to assess this issue.  673 F.3d at 1382.  The facts here are fully developed and show that Samsung's filing before this Court was a litigation tactic to escape Judge Scarsi's adverse rulings.  D.I. 25 at 17–18.

The suggestion that this motion is an elaborate ruse to shift the dispute regarding the '523, '595, and '218 patents is puffery.  If Netlist were to attempt to add these patents to its distinct Texas Action (it will not), Judge Gilstrap would rightfully refuse to accept them.

## II.    The Court Should Dismiss Count IV: Non-Infringement of the '912 Patent

With respect to the '912 patent, Samsung now claims that jurisdiction is not based on indemnification requests, but is instead based on threats against Samsung products supplied to Google.  D.I. 27 at 13.  Samsung has plead itself out of this theory.  As the FAC concedes, Netlist has plead before Chief Judge Seeborg that "Netlist asserted claim 16 against Google's memory modules compliant with **certain portions** of the JEDEC DDR4 standards," in specific certain

"DIMMs that comply with **certain JEDEC DDR4 standards while operating in PDA mode** or products that operate in a substantially similar manner."  FAC ¶ 41 (emphasis added).  Notably, this is the only response Samsung mustered after seeing Netlist's original motion to dismiss.  This does not satisfy muster.  *First*, Samsung does not plead in the FAC that its products practice the PDA function that is at issue in the '912 patent, claim 16.  *Second*, Netlist makes no reference to Samsung anywhere in its infringement contentions.  Indeed, this would be an impossibility, because Netlist served its claim 16 infringement contentions **before** Google identified its products or their source and design.  *Netlist, Inc. v. Google LLC*, No. 09-cv-5718, D.I. 181 at 10 (N.D. Cal. Aug. 27, 2021) ("[Netlist] prepared and served infringement allegations against those [DDR4] products prior to receiving any such discovery.").  *Third*, Samsung does not plead that there are any product designs beyond the ones it allegedly provides to Google that it is concerned about.

Simply put, the infringement contentions before Chief Judge Seeborg do not make any reference to Samsung.  In contrast, Samsung only relies on cases in which courts allowed a manufacturer to use threats against a customer as a basis for jurisdiction when the threats were based explicitly on products from that particular manufacturer.  *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014) (charts provided to SAP's customers "cite to SAP-provided user guides and documentation for each claim element"); *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1376–77 (Fed. Cir. 2011) (defendant's presentation to plaintiff "explicitly and repeatedly singled out Arris' products used in Cable One's network to support its infringement contentions"); *In re Mobile Telecomm. Techs., LLC*, 247 F. Supp. 3d 456, 461–62 (D. Del. 2017) (assertions against customers "expressly identify [declaratory judgment plaintiffs'] products as 'examples' of equipment that directly infringe the asserted patents"); *Intel Corp. v. Future Link Sys., LLC*, No. 14-cv-377, 2015 WL 649294, at *7–8 (D. Del. Feb. 12, 2015) (the

patentee has accused customers of infringement based "solely" on the use and sale of the manufacturer's components). Samsung's sole option is to intervene in the Google Action because it cannot plead an independent basis for jurisdiction in Delaware. *DataTern*, 755 F.3d at 904.

Netlist's assertion of the '912 patent against Inphi—in a case also before Judge Scarsi that Samsung did not seek to join and which has now been dismissed without prejudice—and Google does not create jurisdiction here: "the fact that [a patent holder] had filed infringement suits against other parties for other products does not, in the absence of any act directed toward [the declaratory judgment plaintiff], meet the minimum standard discussed in *MedImmune*." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010). Netlist has never communicated with Samsung about the '912 patent.

Finally, Samsung's representation that its subversion of Chief Judge Seeborg is justified by *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349 (Fed. Cir. 2011) has no connection to reality. In that case, Kodak, the putative manufacturer, did not run to another court for relief, but brought a counterclaim in the same action involving its customers, such that the judge that first had jurisdiction could make a reasoned determination of how to proceed. *Id.* at 1352. This is the exact opposite of Samsung's behavior here. *Spread Spectrum* also holds that "the guiding principles in the customer suit exception cases are efficiency and judicial economy." *Id.* at 1357. Allowing Samsung's action would destroy both. The '912 action against Google has been pending for more than a decade. Chief Judge Seeborg has held extensive oral arguments on motions for summary judgment on intervening rights, including on claim 16, the claim that is the subject of Samsung's allegation. FAC ¶ 178. He also held extensive oral argument on the same inequitable conduct claim Google attempted to add, and that Samsung presents in Count X. *Compare* FAC ¶¶ 370–403 *with Netlist, Inc. v. Google LLC*, No. 09-cv-5718, D.I. 206-2 ¶¶ 17–34

(N.D. Cal Sept. 17, 2021).  Efficiency and judicial economy weigh entirely in favor of dismissal.

### III.    There is No Subject Matter Jurisdiction over the Texas Patents

Netlist filed the Texas Action on December 20, 2021, two months after Samsung filed its original complaint.  This Court lacked jurisdiction over the Texas Patents as of the time of the original complaint, at which time Netlist had never asserted the Texas Patents against Samsung. *See generally* D.I. 25 at 14–15.  Samsung's Opposition does not even attempt to argue this Court had jurisdiction over the Texas Patents before Netlist filed its Texas Action.

Instead, Samsung argues that there is no requirement that declaratory judgment jurisdiction be analyzed based on facts at the time of the original complaint.  Nonsense.  The cases Samsung cites hold the exact opposite.  *Rockwell Int'l Corp. v. United States* affirms the "rule that subject-matter jurisdiction depends on the state of things at the time of the action brought."  549 U.S. 457, 473 (2007).  In *Rockwell*, the Supreme Court "look[ed] to the amended complaint to determine jurisdiction" but only analyzed the allegations in the amended complaint as they related to the state of facts ***at the time the original complaint was filed***—not to facts arising after the original complaint.  *Id.* at 473–74.  The Court explained that "[t]he state of things and the originally alleged state of things are not synonymous."  *Id.* at 473.  Samsung, via its FAC, had the opportunity to add additional allegations as to the state of facts at the time of the original complaint was filed to support its argument that this Court had jurisdiction over the Texas Patents as of the date of the original complaint.  Samsung could muster none.  Samsung also miscites *Lannett Co. v. KV Pharm.*, 2009 WL 10737496, at *3–4 (D. Del. Feb. 4, 2009).  In *Lannett*, the declaratory judgment plaintiff attempted to rely on events arising after the filing of the original complaint—in particular that the patentee brought counterclaims of infringement on the patents-at-issue—to assert that there was declaratory judgment jurisdiction.  The judge rejected this argument: "I disagree with Lannett's argument that . . . there is a live controversy between the parties because KV had asserted

counterclaims by the time that it filed the Second Amended Complaint." *Id.* at *4 n.2.

*Innovative Therapies* is instructive.  The patent owners sued for patent infringement in another jurisdiction ***after*** the filing of a declaratory judgment action of non-infringement, and the declaratory judgment plaintiff argued that this created subject matter jurisdiction over the declaratory judgement action.  599 F.3d at 1383–84.  The Federal Circuit rejected this argument: "[U]nless there was jurisdiction at the filing of the original complaint, jurisdiction could not be carried back to the date of the original pleading." *Id.* at 1384; *see also GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("[L]ater events may not create jurisdiction where none existed at the time of filing.") (citation omitted).

Samsung's citation to *Intel Corp. v. AmberWave Sys. Corp.*, 233 F.R.D. 416 (D. Del. 2005) highlights exactly why Samsung's behavior is inappropriate here.  There, Intel filed a declaratory judgment action regarding an issued patent. *Id.* at 417.  In its original complaint, Intel stated that it wished to reserve "all rights to amend this Complaint to seek a declaratory judgment of noninfringement of the patents that issue from the '947 and '499 Applications." *Id.*  AmberWave did not move to dismiss for lack of subject matter jurisdiction.  Indeed, Intel's request was reasonable because it had been put on notice that it infringed the allowed claims in those applications at the time of ***the original suit***. *Id.* at 416–17.  After filing the original complaint, two events occurred.  First, AmberWave filed a patent infringement suit in the Eastern District of Texas on a patent in a different family from the patents and applications referenced in Intel's complaint—the '632 patent. *Id.* at 417.  Intel did not attempt to strip the Eastern District judge of his authority to decide the disposition of the patent.  Intel took the proper step of filing a motion to transfer to Delaware, which was granted by the Eastern District. *Id.*  When one of the patents from the allowed applications referenced in the original declaratory judgment complaint issued, the

Delaware Court allowed a supplemental pleading adding the newly issued patent under Rule 15(d) under the unique facts presented, where jurisdiction already existed and where a related case had been transferred to this court from the Eastern District of Texas. *Id.* at 417–19.

## IV.   <u>The Court Should Use Its Discretion to Dismiss the Complaint</u>

### A.   **Samsung's Complaint Interferes with Judge Scarsi's Authority**

Judge Scarsi ruled that Samsung materially breached the JDLA, and that Netlist properly terminated the JDLA. D.I. 21-3, at 20–21; D.I. 25-2, at 2. In that case, Samsung did not argue it maintained residual license rights as a result of JEDEC policy. To the contrary, Judge Scarsi ruled that Samsung waived all its affirmative defenses. *Netlist, Inc. v. Samsung Elec. Co., Ltd.*, No. 20-cv-933, D.I. 243, at 3 n.3 (C.D. Cal. Nov. 17, 2021) ("The Court deems any other affirmative defenses abandoned."); *id.* at 6 ("The Court deems Samsung's acquiescence, estoppel and waiver affirmative defenses abandoned."). Samsung ignores the argument that license is a compulsory affirmative defense. Fed. R. Civ. R. 8(c). And Samsung ignores the arguments that its claim that JEDEC policy preserves license rights in Netlist's patents after termination was a compulsory affirmative defense. D.I. 25 at 17–18. Samsung claims it is not attempting to run away from Judge Scarsi, but if that is so, Samsung can refile in front of Judge Scarsi.

### B.   **Samsung's Complaint Interferes with Chief Judge Seeborg's Authority**

As noted above, Chief Judge Seeborg is deciding a matter that is more than a decade old on a fully briefed set of motions touching on the identical issues Samsung is presenting here.

### C.   **Only a Texas Court Can Resolve All Claims Relating to the Texas Patents**

Samsung does not dispute that Texas is the only forum in which Netlist can bring its claims against SEC, SSI, and SEA. *Id.* at 18–19. Samsung does not dispute that Texas is the only location in the United States where it manufacturers semiconductors. *Id.* at 19. Samsung relies on a self-serving hearsay declaration claiming it never "designs" and no longer "manufacturers" memory

modules in the United States.  D.I. 23 ¶¶ 8, 9, 10.  The declaration says nothing about where it conducts research and development, where it sells its memory modules, nor where it tests its memory modules.  *Id*.

Samsung's claim that this Court can shield SEA from liability based on the "customer suit" exception is unsupported.  D.I. 27 at 18–19.  Not a single case cited by Samsung involves staying a case as to one affiliate in favor of another affiliate when both are infringers.  Samsung's strategy is to limit its damages liability by keeping SEA out of the proceedings, hoping to hide the benefit generated by SEA's infringing use.  The Federal Circuit holds that benefits from use, not just transfer pricing, are a proper basis of damages.  *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007) is on point.  In that case, the Federal Circuit refused to cap the defendant's damages at the transfer price charged for the infringing seeds, because it would ignore the benefits that the infringer obtained from the use of the infringing seeds:  "In determining the amount of a reasonable royalty [for infringement damages], it was proper for the jury to consider . . . the benefits that [patentee]'s technology conferred on farmers such as [the defendant]."  *Id.* at 980–81.  In this case, the benefits from the use of the infringing modules in the United States are generated by SEA.

As noted below, the first-filed court as to the Texas Patents is Texas.  But even if it was not, the fact that SEA cannot be sued in Delaware is dispositive.  This is because the first-filed rule is a prudential doctrine designed to achieve efficiency.  The Texas Action brings claims against SEA, SEC and SSI.  D.I. 25 at 18–19.  Under Fifth Circuit precedent (which governs that case), an affiliate is a necessary party if it "emerges as an active participant in the alleged conversion." *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985).  Netlist pleads in the Texas Action that SEA is committing acts of infringement.  D.I. 21-2 ¶ 7 (Netlist's Complaint).  Samsung does not deny this.  The Texas Action should proceed so that complete relief can be granted.

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012), cited by Samsung, supports dismissal because of the absence of SEA.  The Federal Circuit noted that, regardless of what case is first-filed, an action should not proceed in a forum if "a key party [one of the Defendants] was absent from the Delaware action."  *Id.* at 1299.

### D.     The Delaware Action Is Not the First-Filed Action

Samsung claims that as to any lawsuit ever filed between Samsung and Netlist, the first-filed action is this one in the District of Delaware regardless of whether the subsequent suit "relates back" to the FAC as the Federal Circuit defines the standard.  Dkt. 27 at 12.  Under Samsung's standard, the first-filed action is the case before Judge Scarsi in the Central District.  The only coercive claim present in the FAC—for breach of contract—makes extensive reference to the proceedings before Judge Scarsi and claims that they serve as a premise for the claim:

> In ongoing litigation, Netlist and Samsung dispute whether Samsung has a license to Netlist's patents, including the Patents-in-Suit, under the [JDLA].  FAC ¶ 448.

> Netlist continues to have an obligation to license its SEPs to Samsung on RAND terms, notwithstanding any breach of the [JDLA] or any termination of the license. . . . *Id.* ¶ 440.

> In reality, the teaching of *Anza Tech., Inc. v. Mushkin, Inc*., 934 F.3d 1359 (Fed. Cir. 2019)

makes clear that the allegations in the FAC as to the Texas Patents do not relate back to the original complaint.  D.I. 25 at 20–23.  Indeed, under Samsung's theory its original complaint would sweep in every patent that Netlist ever obtains relating to memory modules.  But there is a more basic, commonsense issue before this Court.  Because of the patent venue statute, Texas is the only location among the three venues (Central District, Delaware, Texas) in which all of SEA, SEC and SSI can be properly sued for patent infringement and not be subject to transfer scrutiny.

## V.     <u>Conclusion</u>

For the foregoing reasons, Netlist respectfully request that the Court dismiss the FAC.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorney for Defendant*

Dated: March 9, 2022