IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG SEMICONDUCTOR, INC., <br><br> Plaintiffs and Counter Defendants, <br><br> v. <br><br> NETLIST, INC., <br><br> Defendant and Counter Plaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 21-1453-RGA-JLH |
| NETLIST, INC., <br><br> Counter Plaintiff, <br><br> v. <br><br> GOOGLE LLC AND ALPHABET INC., <br><br> Counter Defendants. | ) ) ) ) ) ) ) ) ) ) | |

**NETLIST, INC.'S ANSWERING BRIEF IN OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS GOOGLE AND ALPHABET, OR ALTERNATIVELY, SEVER AND STAY AND DISMISS WILLFULNESS AND INDIRECT INFRINGEMENT ALLEGATIONS (D.I. 63)**

OF COUNSEL:
Jason Sheasby
H. Annita Zhong
Michael Tezyan
Yanan Zhao
Thomas C. Werner
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

Dated: December 6, 2022

Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Netlist, Inc.*

**TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ............................................................................. 2

STATEMENT OF FACTS AND ARGUMENT ....................................................... 4

I.      Netlist Has Alleged Plausible Patent Infringement Claims Against Alphabet ............... 4

II.     Google and Alphabet Are Properly Joined in this Action .................................. 7

        A.      It Is Undisputed That Joinder Is Permissible in This Case .................................. 8

        B.      The Customer-Suit Exception Is Inapplicable ...................................... 8

        C.      Joinder Will Avoid Prejudice And Increase Judicial Economy ......................... 10

        D.      Dismissal Is Not an Appropriate Remedy. ...................................... 13

        E.      The Google Counter-Defendants Cannot Carry Their Burden to Show a
                Severance and Stay Is Otherwise Necessary. .................................... 13

III.    Netlist's Willfulness Allegations Are Sufficient ............................................ 17

IV.     Netlist's Indirect Infringement Allegations Are Sufficient ........................... 19

CONCLUSION ............................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akoloutheo, LLC v. Sys. Soft Techs., Inc.*,
   No. 20-cv-985, 2021 WL 1947343 (E.D. Tex. May 14, 2021) .................................................7

*Allergan, Inc. v. Sandoz Inc.*,
   2013 WL 1222347 (E.D. Tex. Mar. 25, 2013) .........................................................................15

*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*,
   530 F. Supp. 3d 468 (D. Del. 2021)......................................................................................2, 6

*Berkeley\*IEOR v. Teradata Operations, Inc.*,
   2019 WL 1077124 (N.D. Ill. Mar. 7, 2019)............................................................................16

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) (superseded on other grounds)............................................19

*Bio-Rad Labs. Inc. v. Thermo Fisher Scientific Inc.*,
   267 F. Supp. 3d 499 (D. Del. 2017)........................................................................................17

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ...................................................................................................5

*Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*,
   2014 WL 5580967 (D. Haw. Oct. 30, 2014) .............................................................................9

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   911 F.2d 670 (Fed. Cir. 1990).................................................................................................20

*Carucel Investments, L.P. v. Novatel Wireless, Inc.*,
   2016 WL 8738221 (S.D. Cal. May 13, 2016)...............................................................9, 12, 14

*Clinton v. Jones*,
   520 U.S. 681 (1997)............................................................................................................3, 14

*In re Dell Inc.*,
   600 Fed. App'x 728 (Fed. Cir. 2015)....................................................................................2, 9

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
   734 F. Supp. 656 (D. Del. 1990)..............................................................................................14

*Elmore v. Henderson*,
   227 F.3d 1009 (7th Cir. 2000) .................................................................................................13

**Page(s)**

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012)........................................................................8, 14

*First Mortgage Corp. v. United States*,
    961 F.3d 1331 (Fed. Cir. 2020).................................................... *passim*

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)...............................................................................5

*In re Google, Inc.*,
    588 Fed. App'x 988 (Fed. Cir. 2014) ..................................................................9

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989)........................................................................11

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016)........................................................6

*Landis v. North American Co.*,
    299 U.S. 248 (1936)........................................................................................14

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017).........................................................................5

*M2M Sols. LLC v. Telit Commc'ns PLC*,
    2015 WL 4640400 (D. Del. Aug. 5, 2015) .........................................................6

*Manigault-Johnson v. Google LLC*,
    2019 WL 3006646 (D.S.C. Mar.31, 2019) .........................................................6

*Mitutoyo Corp. v. Central Purchasing, LLC*,
    499 F.3d 1284 (Fed. Cir. 2007).......................................................................17

*Murata Mach. USA v. Daifuku Co., Ltd.*,
    830 F.3d 1357 (Fed. Cir. 2016).......................................................................14

*In re Nintendo of Am., Inc.*,
    544 Fed. App'x 934 (Fed. Cir. 2013).............................................................9, 10

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014)..................................................................3, 9, 10

*Omega Patents, LLC v. Skypatrol, LLC*,
    2012 WL 2339320 (S.D. Fla. June 19, 2012) ............................................8, 9, 12

*RPost Holdings, Inc. v. DocuSign, Inc.*,
    2019 WL 1982531 (E.D. Tex. May 3, 2019).....................................................3, 9

**Page(s)**

*Sabolsky v. Budzanoski,*
    457 F.2d 1245 (3d Cir. 1972)................................................................13

*Spread Spectrum Screening LLC v. Eastman Kodak Co.,*
    657 F.3d 1349 (Fed. Cir. 2011)...........................................................9

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE),*
    2017 WL 896988 (D. Del. Mar. 7, 2017) ..........................................6

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.,*
    458 F.3d 1335 (Fed. Cir. 2006).........................................................3

*Tissue Anchor Innovations, LLC v. Fountain Valley Reg'l Hospital,*
    2019 WL 8219779 (C.D. Cal. Nov. 25, 2019)....................................16

*UltimatePointer, L.L.C. v. Nintendo Co.,*
    2014 WL 12515338 (E.D. Tex. June 17, 2014)...................................16

*WesternGeco L.L.C. v. ION Geophysical Corp.,*
    837 F.3d 1358 (Fed. Cir. 2016)..........................................................19

*Wrinkl, Inc. v. Facebook,*
    2021 WL 4477022 (D. Del. Sept. 30, 2021) .......................................18

**Statutes**

35 U.S.C. § 271(b) .......................................................................19, 20

35 U.S.C. § 271(c) .......................................................................20

35 U.S.C. § 299...........................................................................1, 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).................................................................5

Fed. R. Civ. P. 20.......................................................1, 9, 10, 14, 17

Fed. R. Civ. P. 21.......................................................................14

Google LLC ("Google") and its parent Alphabet Inc.'s ("Alphabet") (collectively "the Google Counter-Defendants") motion to dismiss or to sever and stay Netlist's counterclaims (D.I. 63) should be denied because Netlist properly joined Google and Alphabet in this action under FRCP 20 and 35 U.S.C. § 299, the customer-suit exception is inapplicable, and Netlist has alleged sufficient facts as to its willful and indirect infringement claims.

## NATURE AND STAGE OF PROCEEDINGS

This case was initiated by Samsung on October 15, 2021, seeking a declaratory judgment that Samsung does not infringe various Netlist patents.  D.I. 1.  The current patents at issue include U.S. Patent Nos. 10,217,523, 9,858,218, and 10,474,595 (collectively the "Asserted Patents"). Netlist answered Samsung's complaint on August 22, 2022, alleging infringement of the Asserted Patents.  D.I. 40.

On September 12, 2022, Netlist filed a First Amended Answer, adding cross-claims against Google and Alphabet for infringement of the Asserted Patents.  D.I. 45.  On November 1, 2022, Netlist amended its answer to assert counterclaims, rather than cross-claims, against Google and Alphabet.  D.I. 58.  Specifically, Netlist asserts that Google and Alphabet each makes, uses, sells, offers to sell, and/or imports within the United States products that infringe Netlist's Asserted Patents.  Netlist also alleges claims for willful and indirect infringement.

Google was a Netlist customer from 2003 to 2008, during which time Netlist shared its sophisticated memory module designs with Google.  *See* Ex. 1, *Netlist, Inc. v. Google LLC*, No. 09-cv-5718, D.I. 301 at 3 (N.D. Cal.) ("N.D. Cal. Action"). Importantly, numerous companies other than Samsung "can supply DDR4 DIMMs to Google or its contractors who assemble servers," and "Google will simply source its modules from another manufacturer" if Netlist wins a judgment against Samsung.  *Id.* at 5.  Google has not denied these facts.

- 1 -

The Court entered a Scheduling Order on November 9, 2022, which set a trial date in February 2025.  D.I. 61.

## SUMMARY OF ARGUMENT

**1.**  Netlist has alleged sufficient facts to state a claim of patent infringement against Alphabet by alleging that Alphabet itself has conducted infringing activities.  Alphabet's status as the parent company of Google does not afford it complete immunity from liability as the Google Counter-Defendants claim. That Netlist's amended answer refers to Google's and Alphabet's infringing activities both individually and collectively does not invalidate Netlist's counterclaims against Alphabet.  *Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, 530 F. Supp. 3d 468, 488 (D. Del. 2021) (plaintiff plausibly pled that each of several defendants committed infringing acts, even where plaintiff did "sometimes refer to all three Defendant entities collectively").

**2.**  The Google Counter-Defendants are properly joined. Netlist has alleged that the Google Counter-Defendants use infringing products and devices, including memory modules supplied by Samsung and other third parties.  The Google Counter-Defendants' and Samsung's infringing activities thus arise out of at least some of the same transactions, occurrences, or series of transactions or occurrences, and involve factual questions common to all counter-defendants. For example, when the Google Counter-Defendants purchase and use memory modules from Samsung, overlapping infringement issues exist.  Joinder is therefore permissive.

**3.**  The customer suit exception, relied on by the Google Counter-Defendants, is unavailing.  ***First***, numerous courts have held that this exception has limited applicability, if any, to cases such as this in which a supplier (Samsung) and customer/user (the Google Counter-Defendants) are involved in the same proceeding.  *In re Dell Inc.*, 600 Fed. App'x 728, 730 (Fed. Cir. 2015) ("[W]e are aware of [no appellate court case] that sets forth the proposition that a district

court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier"); *RPost Holdings, Inc. v. DocuSign, Inc.*, 2019 WL 1982531, at *2 (E.D. Tex. May 3, 2019) (customer-suit exception "does not apply to a *single* suit that encompasses both manufacturers and their customers") (emphasis in original). ***Second***, the Google Counter-Defendants have not agreed to be bound by any decisions reached in the litigation between Samsung and Netlist. This leaves the door open for the Google Counter-Defendants to relitigate issues of infringement and validity even if they have already been resolved between Netlist and Samsung, defeating the customer suit exception's purpose of "facilitat[ing] just, convenient, efficient, and less expensive determination" of issues in patent cases. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). ***Third***, Netlist has alleged that Samsung is but *one* of the suppliers of infringing products to the Google Counter-Defendants. Therefore, Netlist's infringement claims against the Google Counter-Defendants will need to be addressed regardless of the Samsung outcome. Further, the Google Counter-Defendants are not resellers of Samsung products—they use the Accused Instrumentalities extensively to provide services to their own customers. Because the Google Counter-Defendants incorporate infringing products from Samsung and other suppliers into their own systems which are themselves infringing, resolving the disputes between Samsung and Netlist will not fully dispose of legal and fact issues relating to the Google Counter-Defendants. *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

4.    The Google Counter-Defendants cannot otherwise carry their burden to show that severance and a stay are appropriate. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). ***First***, the proposed stay would indefinitely delay Netlist's ability to vindicate its rights while the Google Counter-Defendants' infringing activities continue, and it is unclear exactly when movants believe

such a stay should end.  *See* D.I. 64 at 1-2.  ***Second***, key issues in Netlist's counterclaims will not be resolved by the litigation between Netlist and Samsung, because Samsung is not the only supplier of Accused Instrumentalities to Google.  Moreover, the Google Counter-Defendants' assertions that a stay will simplify issues in this case are premised on speculation about the outcome of unresolved IPRs and ongoing proceedings between Netlist and Samsung.  ***Third***, the Scheduling Order in this case has already set specific deadlines and discovery expectations for the parties, including a trial date.  A stay would disrupt this timeline—to which all parties, including the Google Counter-Defendants, have agreed—with no tangible benefit to the parties or Court.

**5.**  Netlist has sufficiently alleged willful and indirect infringement by Google and Alphabet.  The Google Counter-Defendants' contention that Netlist's willfulness and indirect infringement allegations are based only on post-suit knowledge is inaccurate: For the Google Counter-Defendants, the "suit" did not begin in this court until Netlist first brought its infringement claims against them on September 12, 2022—nearly a year after Samsung filed its declaratory judgment complaint.  Netlist's pleading alleges that the Google Counter-Defendants had knowledge of this action as of 2021, that they knew or should have known the Asserted Patents were infringed well before they were brought into this proceeding, and that they continued infringing—both directly and indirectly—anyway.  D.I. 58 ¶¶ 60, 80, 99.

## STATEMENT OF FACTS AND ARGUMENT

**I.**   **Netlist Has Alleged Plausible Patent Infringement Claims Against Alphabet**

In arguing that Netlist's claims against Alphabet should be dismissed, the Google Counter-Defendants ignore the factual allegations in Netlist's pleadings and attempt to obscure the issues with red herring arguments.

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).   A party asserting patent infringement "need not prove its case at the pleading stage."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1356 (Fed. Cir. 2021) (quotation omitted).  Instead, it is enough for counterclaims to "place the alleged infringer on notice of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quotation omitted).

As the Google Counter-Defendants acknowledge, a parent company can be liable for conduct of its subsidiaries "where the parent directly participated in the alleged wrong."  D.I. 64 at 4.  That is precisely what Netlist has alleged here.  Indeed, Netlist explicitly alleges:

> On information and belief, ***Alphabet, <u>individually</u> and collectively with SEC, SSI, and Google LLC, is involved in the design, manufacture, purchase, use, offering for sale, sale, and/or importation to the United States of certain semiconductor products, including the Accused Instrumentalities as defined below***. D.I. 58 ¶ 6 (emphases added).

Moreover, Netlist's allegations define the two counterclaim defendants (Google LLC and Alphabet Inc.) as "Google" (*id*. at pg. 42) and contain numerous allegations concerning those collective entities' infringing actions (see, e.g., *id*. at ¶¶ 39-40, 44, 56-57, 62, 76-77, 82, 95-96). Contrary to the Google Counter-Defendants' suggestion, Alphabet's liability is not entirely coextensive with Google's, as it has a number of divisions outside of Google LLC (defined in Alphabet's SEC filings as "Other Bets"), such as Waymo and Verily, that likely use the Accused Instrumentalities in an infringing manner.  Thus, the Google Counter-Defendants' assertion that "Netlist does not allege any direct involvement by Alphabet" is demonstrably false.

Alphabet attempts to ignore these allegations by criticizing Netlist for referring to Google LLC and Alphabet collectively as "Google."  But referring to the parties collectively does not negate those allegations or doom Netlist's counterclaims.  *Bench Walk Lighting LLC*, 530 F. Supp. 3d at 488-89 (plaintiff plausibly pled that each of several defendants individually made infringing sales, even where complaint did "sometimes refer to all three Defendant entities collectively").  To the extent the Court believes Netlist's allegations as to Alphabet do not sufficiently describe its infringing activities, Netlist respectfully requests leave to amend its answer to clarify the counterclaims as to Alphabet.

Alphabet's cases are readily distinguishable.  In *M2M Sols. LLC v. Telit Commc'ns PLC*, 2015 WL 4640400, at *3-*5 (D. Del. Aug. 5, 2015), the plaintiff admitted that its infringement allegation against the foreign parent company was based solely on the subsidiary's infringing activities and had explicitly founded its infringement theory on an allegation that the foreign parent exercised "total control" over its American subsidiary.  By contrast, Netlist has made no such admission here and has plausibly alleged Alphabet's own infringing uses of Accused Instrumentalities.  Likewise, in *Manigault-Johnson v. Google LLC*, 2019 WL 3006646, at *2 (D.S.C. Mar.31, 2019) (emphasis added) the complaint "contain[ed] only **one factual** allegation regarding [Alphabet], namely, that it is Google's parent company" and in *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *7 (N.D. Cal. July 8, 2016) the court found that "a parent company cannot be held liable for the alleged wrongs of its subsidiaries" solely because of their association. As noted above, Netlist not only alleges that Alphabet is the parent company to Google LLC, but also that Alphabet individually engaged in infringing conduct.  Alphabet's own activities are at issue.  *See* D.I. 58 ¶ 6.  And in *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017), the Court's decision was based on the fact that the pleading at issue did

not explicitly allege that each of several defendants committed at least one infringing act.  This is in sharp contrast to the pleadings here, where Netlist has made express allegations that Alphabet engaged in infringing conduct itself.[1]  D.I. 58 ¶ 6.

Alphabet's only other arguments relate to piercing the corporate veil.  D.I. 64 at 6.  But because Netlist's counterclaims expressly allege that Alphabet is itself directly engaged in infringing activities, those arguments are irrelevant.  Netlist's factual allegations should be accepted as true at this early stage of the case, and the Google Counter-Defendants' motion to dismiss should be denied.

## II.     Google and Alphabet Are Properly Joined in this Action

The Google Counter-Defendants' procedural arguments regarding joinder are meritless. Federal Rule of Civil Procedure 20(a)(2) allows defendants to be joined in an action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  In the patent context specifically, 35 U.S.C. § 299 as amended by the America Invents Act ("AIA") provides that the "same transaction, occurrence, or series of transactions or occurrences" must "relat[e] to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process," and requires the presence of "questions of fact common to all defendants or counterclaim defendants."  35 U.S.C. § 299(a)(1)-(2).  This standard is met "when there is a logical relationship between the separate causes of action," such

_____

[1] Separately, Alphabet acknowledges that it is a "parent holding company of [] Google."  D.I. 64 at 5.  The parent entity of a corporate defendant can be liable for indirect infringement.  *See Akoloutheo, LLC v. Sys. Soft Techs., Inc.*, No. 20-cv-985, 2021 WL 1947343, at *2 (E.D. Tex. May 14, 2021) (joinder of subsidiary unnecessary because parent could "be liable for [direct infringement and] may also be liable for inducing infringement or contributorily infringing").

that "the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *In re EMC Corp.*, 677 F.3d 1351, 1358-59 (Fed. Cir. 2012).

Because there is no dispute that this standard is met here, and there are no other factors that would support a finding of misjoinder, the Google Counter-Defendants' motion should be denied.

## A.    It Is Undisputed That Joinder Is Permissible in This Case

The Google Counter-Defendants do not dispute that this case satisfies the requirements for joinder under the Federal Rules and AIA. This is not surprising, as Netlist's claims arise out of the same transaction, occurrence, or series of transactions/occurrences, and share an aggregate of operative facts. As Google concedes, Samsung supplies some of the Accused Instrumentalities to Google. D.I. 64 at 11. Indeed, Samsung admitted that it received indemnification requests from Google for at least its DDR4 LRDIMM and RDIMM memory modules. *See* D.I. 1 at ¶ 27. Because "[Samsung] manufactures a product that allegedly infringes the patents in question and then provides the product to [the Google Counter-Defendants]," joinder is proper. *See Omega Patents, LLC v. Skypatrol, LLC*, 2012 WL 2339320, at *2 (S.D. Fla. June 19, 2012) (finding joinder proper where "[defendant] manufactures a product that allegedly infringes the patents in question and then provides the product to [co-defendant]").

## B.    The Customer-Suit Exception Is Inapplicable

The Google Counter-Defendants argue that—even though the requirements for joinder are satisfied—the Court should nevertheless find misjoinder based on the "customer-suit" exception. But this argument is contrary to legal precedent and should be rejected.

When a customer and supplier are sued in *separate* proceedings, the customer suit exception "involve[s] giving priority to supplier litigation over what already is or should be separate litigation with customers, thereby preventing parallel, active, duplicative proceedings."

*In re Dell Inc.*, 600 Fed. App'x. at 730 (distinguishing *In re Nintendo*, 756 F.3d 1363 and *In re Google, Inc.*, 588 Fed. App'x 988 (Fed. Cir. 2014)); *see also Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) ("the customer suit exception typically arises when the first-filed case is an infringement action against a customer and the manufacturer subsequently files a declaratory judgment action against the patent holder in a different forum").

Here, the counterclaims filed in this action are not a *separate* proceeding.  Instead, Netlist accused Google, Alphabet, and Samsung of patent infringement in a *single* suit, nullifying the risk of "parallel, active, duplicative proceedings" and thus the applicability of the customer suit exception.  The Google Counter-Defendants inexplicably ignore that the Federal Circuit has distinguished cases involving separate suits from circumstances where—***like here***—a customer and supplier are involved in the ***same*** litigation.  *See In re Dell Inc.*, 600 Fed. App'x at 730 ("[W]e are aware of [no appellate court case] that sets forth the proposition that a district court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier").  Courts routinely decline to apply the customer suit exception to customers and suppliers involved in the same patent proceeding.  *See, e.g., RPost Holdings, Inc.*, 2019 WL 1982531, at *2; *Omega Patents, LLC*, 2012 WL 2339320, at *2; *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 2016 WL 8738221, at *3 (S.D. Cal. May 13, 2016); *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 2014 WL 5580967, at *6 (D. Haw. Oct. 30, 2014).

The Google Counter-Defendants' reliance on *In re Nintendo of Am., Inc.*, 544 Fed. App'x 934 (Fed. Cir. 2013) (hereinafter "*Nintendo*"), is misplaced.  As the Google Counter-Defendants note, *Nintendo* explained that the requirements of Rule 20 and the AIA are "necessary, but not sufficient, conditions for joinder," *Nintendo*, 544 Fed. App'x at 939, and that a district court should exercise its discretion to consider whether the goals of "avoiding prejudice and delay, ensuring

judicial economy, or safeguarding principles of fundamental fairness" comport with joinder of parties or claims. *Id.* at 939 (quoting *In re EMC*, 677 F.3d at 1360). The district court in *Nintendo* had clearly given no consideration to "convenience and fairness," instead concluding that because certain "defendants can be joined under Rule 20 and the AIA, they will not be severed." *Id.* at 939.

However, *Nintendo* references the customer suit exception only in passing as an "analogous context" to the circumstances of that case, where defendant retailers of Nintendo products would have had "very little to offer in the way of evidence regarding the substantive aspects of the infringement case." *Id.* at 941. That is distinguishable from the allegations pled here. ***First***, because Samsung is not the sole supplier of infringing devices to the Google Counter-Defendants, they will be able to offer evidence regarding their use of Accused Instrumentalities other than those supplied by Samsung. *See supra* 1-2. ***Second***, the Google Counter-Defendants have not agreed to be bound by this Court's rulings on validity or infringement and so will have leave to raise the same issues decided in this case in their own parallel proceeding. ***Third***, unlike the limited allegations made against the retailer defendants in *Nintendo*, Netlist alleges that Google and Alphabet use the Accused Instrumentalities extensively to provide a wide range of services to other companies and to individual end users based on their use of those memory modules. *Compare Nintendo*, 544 Fed. App'x at 935 (noting that retailer defendants merely sold Nintendo and other third-party products) *with* D.I. 58 ¶¶ 51, 60, 80, 99.

### C.    Joinder Will Avoid Prejudice And Increase Judicial Economy.

The Google Counter-Defendants next assert that principles of avoiding prejudice, ensuring judicial economy, and fundamental fairness make joinder improper. But the Google Counter-Defendants' proposal to sever and stay Netlist's counterclaims against them from the

counterclaims against Samsung would create the very problem the customer suit exception seeks to avoid: multiple closely-related suits with overlapping questions of fact and law, raising the risk of duplicative, inconsistent proceedings and outcomes.

The Google Counter-Defendants argue that Samsung's "claims will simplify the claims against Google," and that if the Asserted Patents are held to be unenforceable, if the licensing dispute between Samsung and Netlist is resolved, or if Samsung and Netlist agree to settle, "it would eliminate any potential infringement liability for Google for Samsung products." D.I. 64 at 11.[2]  This argument again ignores that the Google Counter-Defendants' liability does not turn solely on the success of Samsung's declaratory judgment claims or the resolution of other disputes between Samsung and Netlist.  As Netlist's amended counterclaims point out, "Samsung is *one of* the suppliers of the Accused Instrumentalities used by Google," and discovery is necessary to determine all of the other suppliers of infringing products used by the Google Counter-Defendants. D.I. 58 at 52 (emphasis added).  Moreover, the mere possibility of settlement between Samsung and Netlist is no reason to stay—much less dismiss—infringement claims against the Google Counter-Defendants, particularly when Netlist has alleged that they use infringing memory modules that are not supplied by Samsung.  *See* D.I. 58 ¶¶ 40-41.  Thus, resolution of the Samsung claims will not actually resolve all issues with respect to the Google Counter-Defendants.  *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989) (customer suit exception was inapplicable because resolution of plaintiff's action against a supplier would not completely resolve issues between plaintiff and a customer of that supplier).

---

[2] Tellingly, the Google Counter-Defendants do not actually identify *how* they would suffer prejudice or fundamental unfairness by being joined in this case, other than making the vague and inaccurate assertion that they would "have been improperly added as a party to a lawsuit that was solely related to Samsung's products and Netlist's claims."  D.I. 64 at 13.

The Google Counter-Defendants also self-servingly assert that they will have "very little to offer in the way of evidence regarding the substantive aspects of the infringement case." D.I. 64 at 11. This again ignores the fact that Netlist has alleged that the Google Counter-Defendants infringe using products from suppliers beyond Samsung. Google thus has possession of evidence regarding the operation of additional accused infringing products not available from Samsung. As for the memory modules that Samsung does supply to the Google Counter-Defendants, severing and staying the claims against Google and Alphabet—or taking the even further step of dismissing these claims entirely—while Samsung's action proceeds separately would not promote judicial economy or fairness to the parties; to the contrary, a subsequent proceeding for Google and/or Alphabet would lead to delays, duplicative work, and needless expenses for all parties. *See Carucel Inv., L.P.* 2016 WL 8738221, at *3 (declining to apply the customer suit exception or enter defendants' requested stay because it could require "a second round of proceedings involving . . . a second claim construction, a second round of pre-trial motions . . . and a second trial").

Additionally, while Samsung has admitted that Google made an indemnification request to Samsung in connection with the N.D. Cal. Action, *see* D.I. 62 at ¶ 42, there is no evidence that the Google Counter-Defendants have agreed to be bound by the result of Samsung's declaratory judgment action in this Court. If Netlist's infringement claims against the Google Counter-Defendants were to be severed, and then Netlist prevails against Samsung, Google could seek to relitigate and undo the holdings against Samsung in this case. Again, this outcome would create the same inefficiencies and risks of inconsistent outcomes that the customer suit exception is meant to guard against. *See, e.g.*, *Omega Patents, LLC*, 2012 WL 2339320, at *2 ("Severing Plaintiff's infringement claims would not promote judicial economy or reduce expenses but instead would create two separate but similar infringement actions with the potential for inconsistent

outcomes.").  On the other hand, joining the Google Counter-Defendants in this case promotes judicial economy by allowing related fact and legal issues to be resolved at once, with no prejudice or unfairness inflicted on the Google Counter-Defendants.

### D.  Dismissal Is Not an Appropriate Remedy.

Even if this Court finds that the customer-suit exception is applicable or that joinder of Google and Alphabet is improper—which it is not—dismissal is not the proper remedy.  The cases the Google Counter-Defendants rely on are inapposite.  *See Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) (rather than compelling dismissal, stating that "[t]he proper remedy in the case of misjoinder is to grant *severance or* dismissal to the improper party if it will not prejudice any substantial right") (emphasis added); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (noting that the district court judge in that case "could and should have allowed [plaintiff's] claim against [defendant] *to continue as a separate suit* so that it would not be time-barred") (emphasis added).

None of the Google Counter-Defendants' other arguments provide any compelling reason to dismiss this case.  The Google Counter-Defendants contend that Netlist would not be prejudiced by dismissal because "it could simply file a new complaint," but are silent as to why Netlist should be forced to take on the added expense and delay of doing so when Netlist has already asserted infringement claims against the Google Counter-Defendants in this proceeding.  D.I. 64 at 12. Moreover, Netlist has alleged that Samsung is just one supplier of Accused Instrumentalities used by Google and Alphabet.  Dismissal would prejudice Netlist's rights by impeding and delaying its efforts to seek damages for Google's and Alphabet's infringing use of non-Samsung devices.

### E.  The Google Counter-Defendants Cannot Carry Their Burden to Show a Severance and Stay Is Otherwise Necessary.

- 13 -

As an alternative, the Google Counter-Defendants ask the Court to sever and stay Netlist's infringement counterclaims.  While Federal Rule of Civil Procedure 21 authorizes district courts to sever claims, Rule 20's joinder requirements are instructive in deciding whether to sever under Rule 21.  *In re EMC*, 677 F.3d at 1356.  For the reasons discussed above with respect to Rule 20 and the inapplicability of the customer suit exception, Google is properly joined in this case and severance is not appropriate.  *See* Argument Sections I.A and I.B, *supra*.

As for the Google Counter-Defendants' proposed stay, "[t]he proponent of a stay bears the burden of establishing its need," and they have not met that burden.  *Clinton*, 520 U.S. at 708.  In exercising its discretionary power to stay a case, a district court "must weigh the competing interests of the parties and attempt to maintain an even balance."  *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).  "District courts typically analyze stays under a three-factor test: '(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set.'"  *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (quotation omitted).  A party seeking a stay "must make out *a clear case of hardship or inequity* in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to some one else."  *Landis*, 299 U.S. at 255 (emphasis added).

Here, the Google Counter-Defendants do not carry their burden of making out a clear case for the need to stay.  ***First***, the Google Counter-Defendants' assertion that Netlist would not be prejudiced is wrong.  As noted above, litigating Netlist's claims against Samsung and the Google Counter-Defendants collectively is far more efficient than in two separate suits, which would increase delays and costs for Netlist to vindicate its rights.  *Carucel Inv., L.P.*, 2016 WL 8738221,

- 14 -

at *3 (denying motion to stay where there was "potential for the requested stay to complicate and delay the proceedings rather than simplify them" because the stay might necessitate a second round of proceedings for moving defendants).   Moreover, the stay Google proposes is essentially indefinite: Google does not state whether its proposed stay should end when the Samsung IPRs are resolved, when Samsung's appeal of the licensing dispute between Samsung and Netlist is concluded, or when all claims between Samsung and Netlist in this case are resolved.  Instead, it cryptically seeks a stay "pending resolution of Netlist's litigation against Samsung."  D.I. 64 at 1-2.  Such a protracted, indeterminate stay would unduly prejudice Netlist by delaying resolution of its claims against Google with no concrete end in sight, and Google's infringing activities could continue throughout that period.  *See Allergan, Inc. v. Sandoz Inc.*, 2013 WL 1222347, at *1 (E.D. Tex. Mar. 25, 2013) (denying motion to stay, noting that "all plaintiffs have an interest in the timely enforcement of patent rights").

     ***Second***, Google overstates the extent to which this case might be simplified by a stay. Netlist has alleged that—in addition to using the infringing Samsung devices—the Google Counter-Defendants use infringing devices that are not supplied by Samsung.  Thus, any issues that might be resolved in this infringement dispute between Netlist and Samsung would have no bearing on whether the Google Counter-Defendants infringe through their use of these non-Samsung memory modules.  The Google Counter-Defendants hope to stymie the progress of Netlist's claims against them by contending that other proceedings, such as the Samsung-Netlist licensing dispute and Samsung's IPRs, "may simplify Netlist's counterclaims against Google, if not resolve them completely."  D.I. 64 at 14.  But these arguments are inherently speculative.  If even one claim of one Asserted Patent survives the IPRs, the parties will still need to litigate that claim, and discovery and claim construction would still be necessary.  A stay would unnecessarily

delay resolution of Netlist's claims against the Google Counter-Defendants based only upon speculation about whether *some* issues facing the Google Counter-Defendants may be resolved by other proceedings.

The cases the Google Counter-Defendants rely on are inapposite.  For example, the retailer defendants of Nintendo products in *UltimatePointer, L.L.C. v. Nintendo Co.*, 2014 WL 12515338, at *4 (E.D. Tex. June 17, 2014) had agreed to be bound by another court's decisions with respect to claims involving Nintendo, a fact that "weigh[ed] heavily" towards a finding that resolution of the claims against Nintendo would simplify the case.  Here, the Google Counter-Defendants have not agreed to be bound.  In *Tissue Anchor Innovations, LLC v. Fountain Valley Reg'l Hospital*, 2019 WL 8219779, at *4 (C.D. Cal. Nov. 25, 2019), the defendants seeking a stay had "been shown to have purchased an extremely limited quantity (or none) of the Accused Systems."  That is not the case here, where the Google Counter-Defendants purchase and use large quantities of the Accused Instrumentalities.  And in *Berkeley*IEOR v. Teradata Operations, Inc.*, 2019 WL 1077124, at *7 (N.D. Ill. Mar. 7, 2019), unlike in this case, there was no allegation by the plaintiff that the "downstream retailer[]" defendants were supplied with infringing instrumentalities by any party other than the manufacturer defendant, Teradata.

***Third***, a detailed scheduling order has been entered in this case.  *See supra* 2.  The Order sets out specific discovery requirements for Samsung and Google, dates for the major milestones of this case, and, importantly, a specific date for trial.  *Id.*  Google's request to sever and indefinitely stay the counterclaims against it just weeks after the Scheduling Order was entered only delays important discovery and the resolution of issues in this case.

***Finally***, Google's argument in reliance on the N.D. Cal. court's decision to stay the '912 patent litigation is unfounded.  Netlist's litigation against Google as to the '912 patent in the N.D.

Cal. Action has been ongoing since 2009.  Neither Samsung nor any other supplier of Google has

ever been a part of the N.D. Cal. Action—despite this Court's order urging Samsung to intervene

in it.  *See* D.I. 37 at 6.  Relatedly, Google's assertion that "this action now is effectively a collateral

attack on the reasoning underlying" the stay in the N.D. Cal. Action is nonsensical.  D.I. 64 at 1.

"A claim is a 'collateral attack' on a final judgment where 'successful prosecution of the second

action would nullify the initial judgment or would impair rights established in the initial action.'"

*First Mortgage Corp. v. United States*, 961 F.3d 1331, 1340 (Fed. Cir. 2020) (quotation omitted).

The N.D. Cal. Action involves infringement of the '912 patent, which is unrelated to the patents

asserted in Netlist's counterclaims.  Nothing in this proceeding "would nullify the initial judgments

or would impair rights" in the N.D. Cal. Action.  Moreover, the action involving the '912 patent

is evidence of Google's improper attempts to repeatedly delay Netlist's ability to obtain prompt

resolution of its patent infringement claims.  *See* Ex. 2 at 2-4 (N.D. Cal. Action, D.I. 302 Joint

Case Management Statement) (detailing Google's repeated attempts to stay the litigation

commenced in 2009).  Netlist brings counterclaims against Google, Alphabet, and its suppliers in

the same litigation here to resolve the parties' disputes efficiently, and Google's delay tactics

should be rejected.

### III.     Netlist's Willfulness Allegations Are Sufficient

The ordinary rules of notice pleading, not any heightened standard, apply to allegations of

willful infringement, *see Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1290-91

(Fed. Cir. 2007), and while a defendant's knowledge of the patents is a prerequisite to a finding of

willfulness, there is no requirement "to show that the case is egregious" at the pleading stage.  *Bio-*

*Rad Labs. Inc. v. Thermo Fisher Scientific Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017).

Netlist's willfulness allegations meet this standard.  Netlist alleges:

- 17 -

> Google has had actual notice of the [Asserted Patents] since at least October 15,
> 2021, when Samsung initiated this instant declaratory judgment action.  Google
> continues to commit acts of infringement despite a high likelihood that its actions
> constitute infringement, and Google knew or should have known that its actions
> constituted an unjustifiably high risk of infringement.  D.I. 58 ¶ 60; *see also id*.
> ¶¶ 80, 99.

The Google Counter-Defendants assert that Netlist's willfulness allegations are based on

post-suit conduct, but this argument conflates Google and Alphabet with Samsung: Netlist relies

on Samsung's complaint to show ***Google's and Alphabet's*** knowledge of the patents and their

infringing activities, not ***Samsung's*** knowledge.  As the amended counterclaims allege, the Google

Counter-Defendants had knowledge of the Asserted Patents as of the filing of Samsung's

declaratory judgment action on October 15, 2021, nearly a year before Netlist filed cross-claims

(later amended to counterclaims) against Google and Alphabet on September 12, 2022.  D.I. 45.

The Google Counter-Defendants' reliance on *Wrinkl, Inc. v. Facebook*, 2021 WL 4477022 (D.

Del. Sept. 30, 2021) is misplaced.  In that case, the plaintiff's filing of a complaint against

defendants was the only source of defendants' knowledge of the patents-in-suit.  Here, the Google

Counter-Defendants were on notice of the patents-in-suit for nearly one year before Netlist brought

any claims against them.

Moreover, Samsung's complaint notes that Netlist informed Samsung on October 15, 2020

of Netlist's belief that Samsung infringes Netlist's patents, specifically including the patents

Netlist now asserts against Google and Alphabet.  *See* D.I. 1 ¶ 22.  The Google Counter-

Defendants were also aware as of the filing of Samsung's declaratory judgment complaint that

"Samsung [was] no longer licensed to any of Netlist's portfolio of patents," including the Asserted

Patents.  *Id.*  Moreover, just days after Samsung filed its complaint, on October 26, 2021, Netlist

filed a Statement of Recent Decision in the N.D. Cal. Action against Google, bringing that

court's—and Google's—attention to a decision in Netlist's licensing dispute with Samsung

granting summary judgment that a license agreement between Netlist and Samsung was terminated as of July 15, 2020.  Ex. 3 (N.D. Cal. Action, D.I. 216 Statement of Recent Decision).

Thus, Netlist's allegations are sufficient to establish a prima facie case that Google Counter-Defendants (1) had knowledge of the Asserted Patents through Samsung's October 15, 2021 complaint and Netlist's October 26, 2021 statement in the N.D. Cal. Action; (2) had knowledge that Samsung, a supplier of accused memory modules to Google and Alphabet, was not licensed to and was infringing Netlist's patent portfolio, including the Asserted Patents; and (3) knew or should have known that their conduct amounted to infringement of the Asserted Patents.  *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) ("subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer'— can support an award of enhanced damages.") (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)), *rev'd on other grounds*, 138 S.Ct. 2129 (2018).  Nothing more is needed.

## IV.   Netlist's Indirect Infringement Allegations Are Sufficient

Liability for induced infringement under 35 U.S.C. § 271(b) requires a showing that a defendant knew that another party's acts constituted infringement and intended that other party to infringe.  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (superseded on other grounds).  As an initial matter, the Google Counter-Defendants had pre-suit knowledge of the Asserted Patents for the reasons explained above with respect to willful infringement.  *See* Section III, *supra*.

The Google Counter-Defendants rest their argument on the puzzling assertion that Netlist's allegations of indirect infringement "make[] no sense," but entirely fail to explain why this is so. As the Google Counter-Defendants note, Netlist alleges that Google and Alphabet "provide[] an

expansive range of services," and that they use memory components in their provision of those services.  D.I. 58 at 51.  Netlist then explains, for each asserted patent, that the Google Counter-Defendants induce and contribute to infringement by others, such as Google and Alphabet customers and end users, through their acts of making, selling, offering to sell, distributing, or otherwise making available the Accused Instrumentalities and materially similar products and services.  *See id.* at ¶¶ 76-77, 87, 97-98.

The Google Counter-Defendants baldly assert that Netlist's allegations are "silent" as to how Google and Alphabet customers and end users have infringed, but the allegations speak for themselves: Google and Alphabet customers and end users of their products and services infringe by using those products, the Google Counter-Defendants had knowledge of the Asserted Patents, and the Google Counter-Defendants "actively and knowingly aid[] and abet[] [those acts of] direct infringement" by providing instruction on how to use those infringing products and services.  *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990).  Similarly, Netlist has adequately pled contributory infringement.  *See* 35 U.S.C. § 271(c).  Contrary to the Google Counter-Defendants' assertions, Netlist has pled facts showing that Google was aware of the Asserted Patents and the fact that Samsung infringed them by the filing date of Samsung's declaratory judgment complaint.  *See* Section III, *supra*.  Netlist has also alleged that the accused memory modules have no substantial non-infringing use and are a material part of the patented invention.  *See* D.I. 58, ¶¶ 57, 77, 96.

## CONCLUSION

Google Counter-Defendants' Motion (D.I. 63) should be denied.  Alternatively, Netlist requests leave to amend its counterclaims.

OF COUNSEL:
Jason Sheasby
H. Annita Zhong
Michael Tezyan
Yanan Zhao
Thomas C. Werner
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

Dated: December 6, 2022

*/s/ Emily S. DiBenedetto*
Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Netlist, Inc.*