The Honorable____________

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

NETLIST, INC.,

Plaintiff,

v.

MONOLITHIC POWER SYSTEMS, INC.,

Defendant.

Case No. 2:22-mc-00108-RSL

Pending in: The United States District Court for the Eastern District of Texas, Marshall Division—No. 2:21-cv-463-JRG

**PLAINTIFF NETLIST, INC.'S MOTION TO COMPEL MONOLITHIC POWER SYSTEMS, INC. TO COMPLY WITH SUBPOENA**

NOTE ON MOTION CALENDAR: January 6, 2023

ORAL HEARING REQUESTED

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

## TABLE OF CONTENTS

BACKGROUND .......... 2

ARGUMENT .......... 6

I. Netlist's Motion to Compel Should Be Transferred to the Eastern District of Texas Where the Underlying Patent Infringement Action Is Pending .......... 6

II. Netlist's Motion to Compel Should Be Granted Because Netlist's Subpoena Was Properly Served and Seeks Relevant Documents that Are Not Obtainable from the Parties to the Underlying Patent Infringement Action .......... 8

A. There Is No Dispute that Netlist Properly Served the Subpoena .......... 8

B. Technical Information in MPS's Possession Is Highly Relevant .......... 9

C. MPS Fails to Raise Valid Objections to Netlist's Deposition Subpoena .......... 10

CONCLUSION .......... 12

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

## TABLE OF AUTHORITIES

### Cases

*Awosika v. Target Corp.*,
No. 11-cv-185, 2011 WL 13048452 (W.D. Wash. May 26, 2011) ........................................11

*Bastida v. Nat'l Holdings Corp.*,
No. 16-cv-388, 2016 WL 6472648 (W.D. Wash. Oct. 31, 2016)..............................................9

*Crosby v. La. Health Serv. & Indem. Co.*,
647 F.3d 258 (5th Cir. 2011) ........................................................................................9

*Deere & Co. v. XAPT Corp.*,
No. 22-cv-126, 2022 WL 522992 (W.D. Wash. Feb. 18, 2022)........................................6, 7, 8

*Dibb v. AllianceOne Receivables Mgmt., Inc.*,
No. 14-cv-5835, 2015 WL 9690313 (W.D. Wash. Oct. 19, 2015)..........................................12

*Elec. Scripting Prods., Inc. v. HTC Am., Inc.*,
No. 2:21-cv-1045, 2021 WL 3510347 (W.D. Wash. Aug. 10, 2021)........................................7

*Fernandez-Medina v. Olivarez*,
No. 3:20-cv-5703-RAJ-JRC, 2022 WL 4120167 (W.D. Wash. Sept. 9, 2022).........................9

*In re Hume*,
No. 17-cv-1104, 2017 WL 4224421 (W.D. Wash. Sept. 22, 2017) ..........................................7

*Realtime Data, LLC v. MetroPCS Tex., LLC*,
No. 12-cv-1048, 2012 WL 1905080 (S.D. Cal. May 25, 2012) ..............................................11

*In re Subpoena of Amazon.com*,
No. 20-cv-450, 2020 WL 2410474 (W.D. Wash. May 12, 2020) .............................................6

*In re Subpoena to Amazon.com, Inc.*,
No. 17-cv-2399, 2019 WL 13192100 (W.D. Wash. Nov. 19, 2019)........................................8

*In re Subpoena to Apple Inc.*,
No. 14-cv-80139, 2014 WL 2798863 (N.D. Cal. June 19, 2014)...........................................11

*US Plywood Integrity Coal. v. PFS Corp.*,
No. 20-cv-5042, 2021 WL 409968 (W.D. Wash. Feb. 5, 2021)...........................................6, 7

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

**Rules**

Fed. R. Civ. P. 26 ........................................ 2, 9, 10

Fed. R. Civ. P. 45 ........................................ 1, 6, 7, 8, 9

PLAINTIFF NETLIST, INC.'S MOTION TO COMPEL

iii

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

Pursuant to Federal Rules of Civil Procedure 45(d), 45(f), and 37(a), Plaintiff Netlist, Inc. ("Netlist") hereby requests that this Court enter an order transferring this subpoena-enforcement action to the issuing court or enforcing Netlist's October 18, 2022 Subpoena to Testify at a Deposition on Monolithic Power Systems, Inc. ("MPS"). MPS has refused to provide a witness to testify as to the topics provided in Netlist's subpoena for deposition. The requested information is crucial for a fast-approaching trial set for May 2023 in the Eastern District of Texas.

Netlist's subpoena included targeted topics and sought technical information from MPS that is key to the underlying patent infringement disputes between Netlist and Samsung defendants. *Netlist, Inc. v. Samsung Elecs. Co.*, No. 21-cv-463-JRG (E.D. Tex.) (the "E.D. Tex. Action")).

MPS supplies key components of the accused DIMM products at issue in the E.D. Tex. Action, including at least power management integrated circuits ("PMICs"). The asserted patent claims at issue in the E.D. Tex. Action recite specific limitations directed at the structure, function, and operation of these key components. As one example, the asserted claims of U.S. Patent Nos. 11,016,918 (the "'918 patent") and 11,232,054 (the "'054 patent") recite limitations directed to the voltage conversion circuitry and voltage monitoring circuitry within the PMICs:

| | |
|---|---|
| Claim 5 of the '918 patent | The memory module of claim 1, further comprising: a voltage monitor circuit configured to monitor a power input voltage received via a second portion of the plurality of edge connections, the voltage monitor circuit configured to produce a trigger signal in response to the power input voltage having a voltage amplitude that is greater than a first threshold voltage. |
| Claim 1b of the '054 patent | a voltage conversion circuit coupled to the PCB and configured to provide at least three regulated voltages, wherein the voltage conversion circuit includes at least three buck converters each of which is configured to produce a regulated voltage of the at least three regulated voltages. |

*See* Ex. 1 at 13 (Netlist's claim list); *id.* at 17 (showing claim 1b of the '054 patent).

Samsung has repeatedly represented to Netlist that technical information related to PMICs, which is needed to confirm critical operation information of Samsung's accused infringing

products and components thereof, is solely within the possession of MPS. *See, e.g.* Ex. 10 at 3 (July 8, 2022 Reardon Email) ("[F]or the DDR4 and DDR5 products, nearly all the relevant code is in the possession of third parties, and Samsung does not have access to the code.").

In light of Samsung's representation, Netlist served MPS with subpoenas for document production and to testify at a deposition on June 22 and October 18, 2022 respectively. Ex. 12; Ex. 14. In response to Netlist's subpoenas, MPS only produced datasheets and pointed to certain JEDEC standards. MPS also refused to provide a witness for deposition. Ex. 15 at 7-8 (November 7, 2022 Esterhay Email). But the datasheets produced by MPS are far from sufficient to disclose the function, design, and operation of key components of Samsung's accused products in the underlying patent infringement action. After MPS objected to Netlist's deposition subpoena on October 24, 2022, the parties promptly met and conferred on October 26, 2022. Netlist subsequently provided a detailed list of specific technical questions that could not be answered in MPS's document production and explained the relevance of other topics listed in its deposition subpoena. Ex. 15 at 6-7 (Nov. 11, 2022 Email). Although MPS stated that it would investigate these questions on November 14, 2022, MPS did not provide any substantive responses until December 12, 2022. Ex. 15 at 1-2 (Dec. 12, 2022 Email). The response, again, did not answer most of Netlist's questions. The parties met and conferred again on December 12, 2022 and counsel for MPS agreed to confirm, by December 14, 2022, whether MPS would provide a witness or produce responsive documents. Despite the commitment, MPS again failed to respond. Ex. 15 at 1. Despite Netlist's efforts to meet and confer in good faith, MPS has filed to adequately respond to Netlist's subpoena. An order compelling MPS to make a witness available for deposition compliance with the subpoena is thus necessary.

## BACKGROUND

Netlist issued the subpoenas to MPS in connection with the E.D. Tex. Action. Based on information to date—including Samsung's Rule 26(a) disclosures and interrogatory responses—MPS components are at issue for two of the asserted patents: the '918 patent and the '054 patent,

which are asserted against Samsung's DDR5 DIMM products. *See* Ex. 2 ¶¶ 93-96, 106-06 (Netlist's First Amended Complaint); Ex. 3 at 4 (Excerpts of Netlist's Preliminary Infringement Contentions).

Under the existing scheduling order, the parties are to complete fact discovery and serve opening reports on December 22, 2022. Ex. 4 at 3 (E.D. Tex. Docket Control Order). A claim construction hearing was held on November 4, 2022, and trial is set for May 1, 2023. *Id*. at 1.

Netlist has been diligently seeking discovery from Samsung. The day discovery opened in the E.D. Tex. Action, Netlist served a first set of interrogatories and a discovery request letter on Samsung. Ex. 8 (Netlist's First Set of Interrogatories); Ex. 9 (June 8, 2022 Zhong Letter). In particular, Netlist provided Samsung with a detailed list of the categories of documents that Netlist needed to analyze the specific features of Samsung's accused infringing products and asked Samsung to produce these documents. *See* Ex. 9 at 4-22 (listing 165 categories of relevant document productions).[1] Many of these categories implicate functionality contained in products or components that Samsung obtains from third parties, such as MPS.

In response, Samsung represented to Netlist that it only had about 50 potentially responsive third party documents. Ex. 5 (July 20, 2022 Reardon Email) ("Samsung intends to produce documents next week for the third party documents in its possession. We can tell you that there are approximately 50 documents that fall into this category."). Netlist has reviewed those documents, which consist mostly of datasheets that repeat information in JEDEC standards and some simulation files of electrical characteristics not at issue here. According to Samsung, other than the 50 or so third party documents it refuses to authenticate, information relevant to the data buffers, registering clock driver, and PMICs, such as schematics and source code that provide the needed confirmation of how the these components are structured and designed to operate, would

---

[1] This letter is consistent with the local practice in the Eastern District of Texas, which requires parties to proactively produce relevant documents, in lieu of serving formal RFPs. Ex. 17 (E.D. Tex. Action Dkt. 40) at 2. ("Without awaiting a discovery request, each party will . . . product or permit the inspection of all documents . . . in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action.").

only be available through third party discovery.

Indeed, after Netlist repeatedly requested that Samsung provide source code and RTL files regarding various aspects of the accused products, Samsung's counsel stated:

- "[F]or the DDR4 and DDR5 products, nearly all the relevant code is in the possession of third parties, and Samsung does not have access to the code." Ex. 10 at 3.
- "We also point out, as you should be well aware, most of the relevant components implicated by Netlist's contentions are third party components. We have and will continue to produce relevant documents as they are identified and in accordance with our obligations under third party confidentiality obligations. Recall, however, that Netlist has had our list of third party suppliers since we served initial disclosures, and we have provided component supplier list in interrogatory responses as well. Samsung does not control these third parties, and cannot speak to the compliance of any third party in connection with a subpoena in this investigation." Ex. 16 (July 18, 2022 Reardon Email).
- "On PMICs supplied by Montage, Renesas, TI or MPS, this information is contained in third party documents and would properly be sought from the third parties directly." Ex. 6 at 2 (July 26, 2022 Reardon Email).

Based on Samsung's representations, on June 22, 2022, Netlist issued a document subpoena to MPS, with a production date of July 6, 2022. Ex. 12 (Netlist's June 22, 2022 Notice of Subpoena). On July 6, 2022, MPS served written responses to Netlist's subpoena. Ex. 11.[2] At that time, MPS also produced datasheets for two of its products supplied to Samsung: MPQ8894 and MPQ8895F. These datasheets were insufficient. By way of example, the datasheets did not show the power source for MPS PMIC's internal blocks, such as VIN_MGMT; and they did not explain how the PMICs monitor the input voltage or how the register value update procedures operate. Counsel for Netlist and MPS met and conferred, and MPS agreed to investigate further on source code materials regarding the relevant PMICs, including RTL code, software code, schematics, block diagrams, Verilog, *etc*. Ex. 13 (July 18, 2022 Zhao Letter) (memorializing issues discussed during the July 14, 2022 meet and confer). Ultimately, MPS refused to provide any further production.

---

[2] MPS does not dispute that service was proper.

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

In light of MPS's refusal to produce source code for review or inspection, Netlist issued a subpoena for deposition on MPS on October 18, 2022, seeking testimony relating to: (1) authentication of documents produced by MPS and Samsung which were created by MPS (Topics 1-2); (2) the design, function, operation, standard-compliance, competitive advantages, and alternatives of MPS's PMICs (Topics 3-8, 13-14); (3) pricing and customer demand of MPS's PMICs (Topics 10, 12); (4) communications between MPS and Samsung regarding the design and development of the PMICs (Topic 9); and (5) MPS's communications with others regarding Netlist, Netlist's asserted patents, and the underlying patent infringement action (Topic 11). Ex. 14 (Netlist Deposition Subpoena).

The parties met and conferred again on October 26, 2022, and Netlist subsequently provided a list of specific key features of MPS's PMICs that are relevant to Netlist's asserted claims but not adequately disclosed in the two datasheets MPS produced or from Samsung's document production:

1. The source of the input voltage to each functional block within the PMIC;
2. How the switchover to VIN_BULK when VIN_MGMT is unavailable takes place, including the specific functional blocks involved; and
3. Register value update procedures in response to detection of over-voltage or under-voltage for VIN_BULK or VIN_MGMT.

Ex. 15 at 9 (October 27, 2022 Zhao Email) (1-3 collectively, the "Accused Features").

MPS responded on November 7, 2022, pointing to various sections of JEDEC specifications: JESD301-1 (PMIC50x0 Power Management IC Specification Rev 1.8.5). Ex. 15 at 7-8 (Nov. 7, 2022 Esterhay Email). However, the JEDEC specifications MPS pointed to do not provide the level of detail necessary. In particular, specific questions regarding the operation of MPS-supplied components in Samsung's accused products remain unanswered. *See* Ex. 15 at 6-7 (Nov. 11, 2022 Zhao Email); Ex. 1 (Netlist's claim list). MPS ignored Netlist's repeated attempts to continue the meet and confer process for three weeks, and even then still could not provide substantive responses sufficient to answer Netlist's inquiries. *See generally* Ex. 15 (email correspondence between counsel for Netlist and MPS). Given the fast-approaching discovery and

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

expert report deadlines in the underlying E.D. Tex. Action, Netlist was forced to bring this Motion.

## ARGUMENT

### I. Netlist's Motion to Compel Should Be Transferred to the Eastern District of Texas Where the Underlying Patent Infringement Action Is Pending

Because fact discovery in the underlying patent infringement action closes imminently on December 22, 2022, transferring this motion to E.D. Tex where the underlying action is pending is needed to ensure that the issues are efficiently and fairly addressed in a manner that is fair to Netlist and that will avoid disrupting the issuing court's management of the underlying litigation.

Rule 45(f) allows the transfer of subpoena-related motions to the issuing court upon the Court's finding of exceptional circumstances. Fed. R. Civ. P. 45(f). The Advisory Committee's comments explained that transfer to the issuing court where the underlying action is pending is warranted when the interests in having the issuing court decide the discovery dispute "outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion" or when transfer can "avoid disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment, subdivision (f); *see also In re Subpoena of Amazon.com*, No. 20-cv-450, 2020 WL 2410474, at *2 (W.D. Wash. May 12, 2020).

In determining whether to transfer the subpoena compliance action to the issuing court, courts in this District have considered case "complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *US Plywood Integrity Coal. v. PFS Corp.*, No. 20-cv-5042, 2021 WL 409968, at *3 (W.D. Wash. Feb. 5, 2021) (citation omitted). Courts in this District have consistently granted motions to transfer subpoena-related actions to the issuing courts where the underlying action involves complicated issues and where the issuing court has more knowledge of the intricacies of the complex litigation, impending discovery deadlines, and burden on the parties. *See, e.g.*, *Deere & Co. v. XAPT Corp.*, No. 22-cv-126, 2022 WL 522992, at *2 (W.D. Wash. Feb. 18, 2022) (citation omitted) (granting motion to transfer to the issuing court which has resolved



FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

the parties' motion to dismiss, motion to stay, which evidenced that the issuing court had gained "significant knowledge of the facts, procedural posture, and issues underlying the parties' dispute"); *US Plywood*, 2021 WL 409968, at *3-4 (finding the issuing court is in a better position to determine the relevance of the contested documents and deposition which "requires a full understanding of the complexities of the [underlying litigation]"); *In re Hume*, No. 17-cv-1104, 2017 WL 4224421, at *2 (W.D. Wash. Sept. 22, 2017) (granting motion to transfer where the underlying case had been pending in the issuing court for two years and the issuing court had gained substantial experience with respect to the subject matter).

Here, Netlist's lawsuit against Samsung has been pending before Judge Gilstrap for almost a year. The E.D. Tex. Court has held a *Markman* hearing, and has thus gained familiarity with Netlist's patents-in-suit, Samsung's accused products, and the relevant memory technology. It is therefore in a better position to decide the need and burden on the parties in connection with Netlist's subpoena on MPS. As explained above, MPS is one of the third party suppliers of components of Samsung's accused products in the underlying patent infringement action. Having Netlist's discovery disputes against Samsung's suppliers resolved in the same court can best serve the interests of efficiency and judicial economy. *See Deere*, 2022 WL 522992, at *2; *US Plywood*, 2021 WL 409968, at *3-4.

Further, the underlying patent infringement action is on a fast schedule. Fact discovery is set to complete by December 12, 2022; expert discovery is set to complete by January 17, 2023; and trial will start on May 1, 2023. Ex. 4 (E.D. Tex. Docket Control Order). If there is too much delay, this Court's decision on Netlist's motion to compel may require modifications to the schedule in the underlying case to ensure that Netlist has a fair opportunity to conduct follow-up discovery and to include the requested materials in its expert reports. Thus, it is important for the issuing court to exercise its document management by deciding the scope of third party discovery as disputed by Netlist and MPS in this subpoena and to determine the appropriate time line for compliance. *See Elec. Scripting Prods., Inc. v. HTC Am., Inc.*, No. 2:21-cv-1045, 2021 WL 3510347, at *1 (W.D. Wash. Aug. 10, 2021) ("Given that a ruling on the [subpoena compliance]

motion may present a need to reschedule discovery deadline dates, case management interests weigh in favor of finding that exceptional circumstances warrant transferring this motion to the [issuing court].").

Finally, transferring this subpoena enforcement action to the Eastern District of Texas would not cause undue burden on MPS, a multinational corporation with presence in various places in the United States. Moreover, any deposition of MPS's witness(es) would be conducted remotely or occur in the State of Washington, close to its Kirkland office. Ex. 14 at 1 (Netlist Deposition Subpoena); *see also, e.g.*, *In re Subpoena to Amazon.com, Inc.*, No. 17-cv-2399, 2019 WL 13192100, at *2 (W.D. Wash. Nov. 19, 2019) (noting that "it is hard to image what burden Amazon fears if it is required to defend its objection in the Southern District of Texas" because "Rule 45(f) authorizes its counsel to appear in that district without having to associate local counsel, all federal district courts utilize an electronic, web-based docketing system," "it is highly unlikely that the presiding judge would hear oral argument," and subpoena compliance would still occur in Seattle). In any event, the burden on MPS to litigate the subpoena issue before the Eastern District of Texas is "clearly 'outweighed by the interests of fairness, consistency, judicial economy, and speed of resolution.'" *Deere*, 2022 WL 522992, at *2 (quoting *In re Cassell*, No. 16-mc-602, 2016 WL 3645166, at *3 (D. Utah June 30, 2016)).

**II. Netlist's Motion to Compel Should Be Granted Because Netlist's Subpoena Was Properly Served and Seeks Relevant Documents that Are Not Obtainable from the Parties to the Underlying Patent Infringement Action**

If this Court decides not to transfer this enforcement action to the issuing court, MPS should be compelled to provide a witness to testify at a deposition should be granted because Netlist's subpoena appropriately seeks targeted information highly relevant to the patent infringement action.

**A. There Is No Dispute that Netlist Properly Served the Subpoena**

As detailed above, Netlist properly served the subpoena for deposition on MPS on October 18, 2022. MPS has not raised any objection based on improper service.

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

**B. Technical Information in MPS's Possession Is Highly Relevant**

Federal Rule of Civil Procedure 45 governs discovery from nonparties through the issuance of subpoenas. Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment. The scope of discovery through a Rule 45 subpoena is governed by Rule 26(d). *See Fernandez-Medina v. Olivarez*, No. 3:20-cv-5703-RAJ-JRC, 2022 WL 4120167, at *1 (W.D. Wash. Sept. 9, 2022) ("These general discovery limitations apply with equal force to subpoenas to third parties."). Netlist is allowed to conduct discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Bastida v. Nat'l Holdings Corp.*, No. 16-cv-388, 2016 WL 6472648, at *1 (W.D. Wash. Oct. 31, 2016) ("parties may generally obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and "[d]uring discovery, a party may subpoena a non-party to attend a deposition"); *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) ("A discovery request is relevant when the request seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence.") (quotation omitted).

Netlist's '918 and '054 patents at issue disclose the technology for on-board voltage regulation and power management in DDR5 DIMM. Netlist's preliminary infringement contentions cited the JEDEC standards and schematic for PMICs to support its infringement theory. Ex. 3 at 14-20, 24-26 (excerpts of Netlist's preliminary infringement contentions for claim 5 of the '918 patent and claim 1b of the '054 patent). Samsung refuses to acknowledge that its products are JEDEC compliant and disputes that the limitations are met. Ex. 6 at 1 (July 26, 2022 Reardon Email) ("Samsung's compliance with P.R. 3-4(a) does not require Samsung to make a representation as to JEDEC compliance of its own products.").

According to Samsung's Initial Disclosures, MPS supplies the PMICs for Samsung's accused DDR5 DIMM products. Ex. 7 at 19 (Samsung's Initial and Additional Disclosures). Samsung also contends that MPS has knowledge "about the alleged PMIC components in certain of Samsung's Accused Products." *Id.* Samsung's contention underscores the importance of and substantial need for third party discovery into PMICs supplied by MPS.

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

Netlist's subpoena seeks testimony of MPS's witness on topics closely related to Netlist's claims in the underlying patent infringement action, which falls squarely within the requirements of Federal Rule of Civil Procedure 26(b). In particular, Netlist seeks the Court's order to compel MPS to provide a witness to testify as to the following topics:

| Topic No. | Requests | Relevance |
|---|---|---|
| Nos. 1-2 | Authentication and accuracy of documents produced by MPS and others which are generated by MPS | Infringement /damages |
| Nos. 3, 4, 5, 6, 7 | The structures, functions, operations, first implementation, testing, alternatives of MPS's PMICs, in particular the Accused Features. | Infringement |
| Nos. 8, 10, 12, 14 | The pricing, competitive advantages, and customer demand of MPS's PMICs in connection with the Accused Features of MPS's PMICs. | Damages |
| No. 13 | Standard compliance by MPS's PMICs | Infringement /damages |

While most topics are self-explanatory, Netlist went so far as to provide a detailed list of specific technical questions that require an MPS witness' testimony for at least topics 3-7.. *See* Ex. 15 at 6-7.

Netlist has a substantial need for the information sought in the subpoenas because it relates directly to the claim limitations. Further, according to Samsung, the requested information is in the exclusive possession of MPS, and not otherwise accessible to the parties of the underlying patent infringement actions. *See e.g.*, Ex. 10 at 3 (July 8, 2022 Reardon Email) ("[F]or the DDR4 and DDR5 products, nearly all the relevant code is in the possession of third parties, and Samsung does not have access to the code."); *id.* (explaining that Samsung does not have possession of source code or design files of third parties).

**C. MPS Fails to Raise Valid Objections to Netlist's Deposition Subpoena**

"Once the moving party establishes that the information requested is within the scope of permissible discovery, the burden shifts to the party opposing discovery" to show "that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *In re*

FOLIO LAW GROUP PLLC
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

*Subpoena to Apple Inc*., No. 14-cv-80139, 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014) (quoting *Kahlilpour v. Cellco P'ship*, No. 09-cv-2712, 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010)); *see also Awosika v. Target Corp.*, No. 11-cv-185, 2011 WL 13048452, at *1 n.1 (W.D. Wash. May 26, 2011). MPS has not raised any valid objection that would justify its refusal to comply with Netlist's subpoena.

First, MPS argues that requiring a witness to testify about the operation, structure, or functionality of its PMICs supplied to Samsung would be unduly burdensome because relevant information can be more readily accessed through documents produced by MPS. But for the reasons explained above, the two datasheets MPS has produced are inadequate to show the Accused Features of MPS's PMICs—*i.e.*, the source of input voltage, switchover to VIN_BULK, and register value update procedures. Further, MPS has refused to provide source code materials. If MPS contends that producing its source code is too burdensome, then it should be compelled to provide an engineer for deposition. Indeed, courts in the Ninth Circuit have ordered a third party to provide an engineer to be deposed as an alternative when producing source code would be unduly burdensome to the third party. *See Realtime Data, LLC v. MetroPCS Tex., LLC*, No. 12-cv-1048, 2012 WL 1905080, *3 (S.D. Cal. May 25, 2012) (denying a motion to compel production of source code after the nonparty agreed to provide a knowledgeable engineer who could testify as to the functionality of the nonparty's product).

Next, MPS argues that Topic Nos. 8 and 12 are overly broad. Topic No. 8 asks information for the "competitive advantages of MPS PMICs, including features that distinguish MPS DDR Components from those of its competitors." Topic No. 12 asks for "[c]ustomer demand for MPS PMICs." During the parties' meet and confer and subsequent communications, Netlist has clarified that it only intended to seek the competitive advantages and customer demand of MPS PMICs in connection with those Accused Features at issue. As such, the scope of these two topics are narrowly tailored and specifically targeted for information regarding Netlist's asserted claims in the underlying patent infringement action.

Further, MPS has not demonstrated any unique burden for it to prepare the witness for a

deposition. *See Dibb v. AllianceOne Receivables Mgmt., Inc.*, No. 14-cv-5835, 2015 WL 9690313, at *2 (W.D. Wash. Oct. 19, 2015) (denying defendant's motion for a protective order and explaining that a party seeking a protective order or resisting a subpoena based on undue burden must "present a factual showing of a particular and specific need for the protective order")). Netlist's subpoena made it clear that the deposition would be conducted remotely or occur in the State of Washington close to MPS's Kirkland office. Thus, any burden for traveling would be minimal. In conclusion, MPS should be compelled to provide a witness to testify at least as to Topic Nos. 1-7, 8, 10, 12-14 of Netlist's Deposition Subpoena.

## CONCLUSION

Netlist's motion to transfer this subpoena-enforcement action to the Eastern District of Texas should be granted. Alternatively, MPS should be compelled to provide witness(es) to attend a deposition in compliance with Netlist's subpoena.

DATED: December 16, 2022

Respectfully submitted,

*/s/ Aaron Weisman*

**FOLIO LAW GROUP PLLC**
AARON D. WEISMAN (WSBA# 56724)
aaron.weisman@foliolaw.com
CRISTOFER I. LEFFLER (WSBA# 35020)
cris.leffler@foliolaw.com
MICHAEL C. SAUNDERS (WSBA# 51550)
mike.saunders@foliolaw.com
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: 206-880-1802

Jason G. Sheasby (*pro hac vice pending*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice pending*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice pending*)
twerner@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that, in the manner described above and on the dates listed above, counsel for Netlist, Inc. and Monolithic Power Systems, Inc. met and conferred on the subject of Netlist's motion to compel and the parties cannot reach a resolution of the disputes.

*/s/ Aaron Weisman*
Aaron Weisman