IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG SEMICONDUCTOR, INC., <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> NETLIST, INC., <br><br> Defendant and Counter-Plaintiff. <br> NETLIST, INC., <br><br> Counter-Plaintiff, <br><br> v. <br><br> GOOGLE LLC AND ALPHABET INC., <br><br> Counter-Defendants. | C.A. No. 21-1453-RGA-JLH |

**LETTER TO THE HONORABLE JENNIFER L. HALL**
**FROM EMILY S. DIBENEDETTO**

OF COUNSEL:
Jason Sheasby
H. Annita Zhong
Michael Tezyan
Yanan Zhao
Thomas C. Werner
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Netlist, Inc.*

Dated: April 24, 2023

Dear Judge Hall,

Pursuant to the Court's April 14, 2023 Order (D.I. 95), Netlist, Inc. ("Netlist") respectfully submits the following response to the April 19, 2023 submission (D.I. 97) by Samsung Electronics Co., Ltd and Samsung Semiconductor, Inc. ("Samsung") in support of its motion to compel materials from International Trade Commission ("ITC") actions.

The Court should deny Samsung's motion to compel voluminous materials from two ITC Actions that date back to 2016. Neither ITC Action involved any of the patents-in-suit, and Samsung has failed to show how its broad requests are particularly targeted to obtaining documents relevant to the issues in this case. Samsung's refusal to narrowly tailor its requests will result in undue burden, requiring Netlist to engage its former ITC counsel to sift through the ITC records to identify third-party confidential information protected by the ITC Protective Orders, and all for materials that have little (if any) relevance to this case.

**Samsung Fails to Meet Its Burden To Establish Relevance**: Samsung falls far short of establishing the relevance of its broad request for <u>all</u> discovery requests and responses, <u>all</u> filings, <u>all</u> Netlist fact depositions, <u>all</u> expert reports and depositions, and <u>all</u> trial transcripts from two ITC Actions involving sk Hynix. As an initial matter, Samsung fails to tell the Court that a large swath of the materials it requests have either already been produced by Netlist or are publicly available. *See Zimmer Surgical, Inc. et al. v. Stryker Corporation et al.*, C.A. 16-679-RGA-MPT, D.I. 225 (D. Del. May 8, 2018) (denying motion to compel production of publicly-available files because they were equally available to the requesting party). Indeed, Netlist has produced all documents related to the ITC Action that were produced in the co-pending Texas case, including a number of fact depositions. *See, e.g.,* NL-SS-1453_00039362–970. And, there are over 800 documents in the EDIS database regarding the ITC Actions, including numerous filings and transcripts. Samsung provides no explanation as to why these materials are inadequate.

With respect to the other documents Samsung seeks (e.g., <u>all</u> discovery requests and responses, additional fact depositions, and <u>all</u> expert materials), Samsung improperly glosses over the fact that ***three*** of the eight patents litigated in the ITC Actions—U.S. Patent Nos. 9,606,907, 8,516,185 and 8,756,364—are not even related to any of the Patents-in-Suit. Samsung's vague and conclusory assertion that there is a "technological nexus" is not sufficient to meet its relevance burden. This Court has already warned Samsung against such hand-waiving. *See* D.I. 37 at 9–10 ("Samsung's characterization of the underlying technology as computer memory modules is too broad," and would improperly "sweep in every patent that Netlist ever obtains relating to memory modules."); *see also Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 381-82 (D. Del. 2009) (analyzing in detail patents from prior and current actions). Here, there is no "technological nexus," as the Patents-in-Suit are directed to memory modules that operate in different modes, whereas the '907 and '185 Patents are focused on a distributed buffer architecture and the '364 Patent is focused on electrical load isolation. As such, there is simply no basis for Samsung's request for "all" ITC-related documents, which would include materials concerning these three, unrelated patents.

Samsung also fails to justify its overly broad request as to the other ITC Patents. "The mere fact that [two actions] involve similar patents is not itself sufficient for a finding of relevancy." *Inventio*, 662 F. Supp. 2d at 382. Rather, Samsung must make a "specified" and "particularized"

1

showing that it is pursuing a "targeted discovery request" that "has a direct bearing on the [parties'] claims and defenses" and is supported by "good cause." *See id*. at 382, 384; *Eisai Inc. v. Sanofi-Aventis U.S.*, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012) (declining to compel prior litigation deposition transcripts because "courts will not permit parties to engage in fishing expeditions"). Samsung does not make such a showing here. It first argues that the ITC materials are relevant to "infringement, invalidity, and claim construction." D.I. 97 at 2. But Samsung fails to identify any overlapping claim terms that it intends to seek construction of in this case, much less explain how an infringement analysis of a third-party product as to distinct patent claims would be relevant. Moreover, Samsung ignores that the claim construction positions and hearing transcript are publicly available in EDIS. And, Netlist has either already produced or will produce the deposition transcripts of the overlapping inventors. Samsung next argues that Netlist's "positions on the JDLA" from the ITC Actions are supposedly relevant to Netlist's purported RAND obligations and damages. But again, Netlist already produced deposition transcripts for its fact witnesses with knowledge of the JDLA (Gail Sasaki and Chuck Hong), and Samsung does not specifically identify any other materials that would be relevant to this issue. Samsung's only other arguments are that "domestic industry" documents might be relevant to damages, and "documents relating to the appropriateness of an ITC exclusion order" are relevant to Netlist's request for "equitable relief." But the domestic industry inquiry is entirely distinct from the reasonable royalty analysis, and Netlist is not seeking an injunction in this case. *See* D.I. 58.

In sum, Samsung makes no effort to explain why the broad swath of materials it seeks are of particular relevance to and have a direct bearing on this action and has thus failed to meet its relevance burden. *Eisai*, 2012 WL 628320, at *3 ("[T]he fact that discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request").

**Samsung Fails to Address (and Even Dismisses) Proportionality**: From the start, Samsung refused to address the proportionality requirement of Rule 26, insisting that Netlist produce "everything" from the ITC Actions. *See* D.I. 97, Ex. B. Even in its motion, Samsung has failed to narrowly tailor its requests, and summarily dismisses Netlist's burden arguments, despite Samsung's express obligations. *See Novanta Corp. v. Iradion Laser, Inc.*, 2016 U.S. Dist. LEXIS 126042, at *6, *15–16 (D. Del. Sep. 16, 2016) (citing the parties' "collective responsibility to consider the proportionality of all discovery" in declining to compel prior litigation materials).

Substantial aspects of any ITC action focus on legal and factual issues unique to the ITC. Samsung effectively demands that Netlist produce—after its former counsel reviews each document for the presence of non-Netlist confidential information—a substantial volume of irrelevant materials. Samsung makes no effort to address the inevitable waste of resources involved in sifting through its broad categories of documents. For example, the ITC imposes no limits on written discovery requests, and parties typically serve a large number (tens if not hundreds) of each form of request. Samsung nowhere explains how each of its "narrowed" categories are important to this action so as to justify the burdens on Netlist, given that Samsung is perfectly capable of seeking discovery relevant to this case in this action.

Samsung disregards governing case law that requests for materials from other litigations be circumscribed, and specifically justified, *even when the same patents are at issue*. *See Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006) (declining to compel production of "all pleadings, deposition transcripts, hearing transcripts, expert reports, and orders" from prior

litigation involving the same patents because movant "has not demonstrated why it is entitled to documents from the Teva Litigation involving matters not at issue in this litigation" nor why those materials are "critical to resolving the issues before the Court"). Instead, Samsung cites cases from distant courts that are plainly distinguishable, if not inapposite. *See AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2019 WL 1571666, at *1 (D. Del. Apr. 11, 2019) (compelling limited production of "prelitigation disclosures," to which impacted third parties had consented, as they are encouraged by statute to do); *Qualcomm Inc. v. Broadcom Corp.*, 2006 WL 8455382, at *8 (S.D. Cal. Aug. 14, 2006) (responding party "[did] not address the merits of these [discovery] requests" in briefing, and "does not contest" relevance); *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 3246094, at *19 (N.D. Cal. June 26, 2013) (parties stipulated to a "technological nexus standard . . . . that would govern their discovery," rather than Rule 26).

As noted above, much of the ITC record is public, at least in redacted form. Samsung fails to explain why those documents do not satisfy its need for discovery. Nor does Samsung adequately address the burden its requests would pose on Netlist due to confidentiality issues. Netlist's counsel of record in this action did not represent Netlist in the ITC Actions. Netlist thus had to engage its former ITC counsel to access materials from that counsel's files dating back as much as six years to try to address Samsung's requests. That counsel recently confirmed that third party CBI permeates the vast majority of the materials requested by Samsung, including from sk Hynix, as well as multiple additional third parties, not all of which Netlist's former ITC counsel have yet been able to identify. Forcing Netlist to undertake the burden of having its former counsel manually review the voluminous record to identify additional third-parties who need to be notified before materials are produced is simply not justified in view of the tangential (if any) relevance. Moreover, Samsung and sk Hynix are competitors, and courts recognize that protective orders are designed specifically to avoid such disclosures. *Inventio*, 662 F. Supp. 2d, at 384 ("[T]his Court is without authority to alter the Protective Order entered by another court by ordering production of any documents within the scope of the Protective Order."). Samsung's own cited case agrees. *Glaukos Corp. v. Ivantis, Inc.*, 2019 WL 12536180, at *3 (C.D. Cal. Sept. 4, 2019) (order "excludes materials designated protected from disclosure" under prior protective order, even though it allowed disclosure after notice to impacted parties).

**Samsung Disregarded Its Meet and Confer Obligations**: Contrary to Samsung's contentions, it was Samsung—not Netlist—who refused to meaningfully engage in the meet and confer process. Samsung initially refused to provide the legal basis for its overly-broad requests, and insisted that Netlist produce "everything" from the ITC actions. D.I. 97, Ex. B. Only later did Samsung propose its "narrowed" categories and provide its factual and legal bases. *Id.*, Ex. C. Netlist never refused to identify what it would and would not produce, and repeatedly informed Samsung that it was working with Netlist's former ITC counsel regarding Samsung's requests. *Id.*, Exs. F, G. Instead of waiting for Netlist to obtain the necessary information from its former counsel—which understandably took time given that the ITC Actions ended many years ago—Samsung abandoned the meet and confer process. Indeed, *after* filing this motion, Samsung requested a meet and confer regarding a subset of the materials at issue in this motion, citing different discovery requests. Ex. 1, at 2. Samsung's gamesmanship is further evidenced by the fact that it timed its motion to overlap with the parties' Texas trial, which ended just last Friday, with the jury awarding Netlist $303 million for Samsung's infringement. Ex. 2 at 2.

3

        Respectfully,

        */s/ Emily S. DiBenedetto*

        Emily S. DiBenedetto (No. 6779)

cc:    Clerk of the Court (by CM/ECF and Hand Delivery)
        All counsel of record (by CM/ECF and Email)